9669

CASTON v. CITY OF ROCK HILL.

(92 S. E. 191.)

1. DEDICATION—SIDEWALKS — ACCEPTANCE OF DEDICATION — USER.—The acceptance of the dedication of a sidewalk may be established by public user, as well as by corporate action, the same as the acceptance of the part of the street used by horses and vehicles.

2. MUNICIPAL CORPORATIONS—TORTS—DEFECTIVE SIDEWALK—STATUTE.—Civ. Code 1912, sec. 3053, making a city liable for injuries caused by defects in any street, causeway, bridge, or public way, makes it liable for a defective sidewalk used for foot passengers, as well as for defects in the part of the way used for horses and vehicles.

3. MUNICIPAL CORPORATIONS—SIDEWALKS—DUTY TO MAINTAIN.—Where a lot holder has set his fence back, and thereby dedicated a space for a sidewalk, which was accepted by user, the law casts on the city the duty to keep that space in reasonably safe condition for use.

4. MUNICIPAL CORPORATIONS—TORTS—QUESTION FOR JURY—DEFECTIVE SIDEWALK.—Where the evidence shows that a gate with three strands of barbed wire stretched on it was prostrate on the sidewalk, the

Court properly submitted to the jury whether that was a defect in the street.

5. MUNICIPAL CORPORATIONS — INSTRUCTIONS — CHARGE ON FACTS.—An instruction that it is the duty of a city to exercise ordinary care to discover any obstruction in the street, or likely to fall across the street, and that if a failure.to perform the duty is negligence, and such negligence, if any, is a proximate cause of an injury, the city is liable, is not objectionable as a charge on the facts.

6. MUNICIPAL CORPORATIONS—SIDEWALKS—DUTY OF CITY—DANGEROUS FENCE.—Where a fence immediately on the inner line of the sidewalk had become decayed, so that it was likely to fall on the way, it was a nuisance, which the city had the right to abate, in the exercise of its duty to keep the way reasonably safe.

7. MUNICIPAL CORPORATIONS—TORTS—EVIDENCE—NEGLIGENCE.—Evidence that a fence post, from which a gate was swung, had been obviously decayed for six months, is sufficient to show negligence by the city, allowing recovery by one who fell across the gate within one hour after it fell on the sidewalk.

Before BOWMAN, J., York, Spring term, 1916.   Affirmed.

Action by Leslie Caston, by his guardian *ad litem,* against the City of Rock Hill.   Judgment for plaintiff, and defendant appeals.

Defendant's exceptions were as follows:

1. Because of error in·charging the jury "that the term 'street,' as employed in the statute, includes the· pavement or sidewalk for pedestrians and also the highway part thereof used by vehicles—that is, what the term in its ordinary acceptation includes.   I charge you that a street means a driveway, sidewalk and all"—the error in the above charge being: That the jury was instructed that if there be a public driveway accepted by the said city, or one that would be termed a street by use or prescription, that a municipality is bound to accept a pavement or· sidewalk adjoining it, although it is private property, and is not under the control or management of the city.

2. Because of error in charging "that it is the duty of a city to exercise ordinary or due care to discover any obstruction in the street, or likely to fall across the street, and if a

failure to perform this duty is negligence, and such negligence, if any, is a proximate cause of an injury to one using the street, then the city is liable for all actual damages resulting therefrom"—the error being: (a) That the above charge was a charge on the facts in this case, as the injury was caused by a certain gate falling across the pavement. (b) That the above charge requires that municipalities should go upon private property, if need be, and remove therefrom such things as might fall across a street.

3. Because of error in not granting the motion made by defendant for a new trial on the grounds heretofore set forth under the caption "Grounds for New Trial;" the said grounds being so adopted, rather than incorporated separately and again as exceptions.

4. The Court erred in not granting the defendant's motion to direct a verdict on the grounds heretofore set forth and entitled "Motion to Direct Verdict;" these grounds being here adopted as exceptions, and not reincorporated separately.

The "Grounds for New Trial" and "Motion to Direct Verdict," referred to in the third and fourth exceptions, were as follows:

Grounds for New Trial. 1. That the jury disregarded the law as given to them by the Court, in that the Court charged them, in substance, that if plaintiff had a safe way and an unsafe way he could not recover; the testimony being that plaintiff stated on the witness stand that he saw the gate, but, being in a hurry, stepped into it, and the testimony of Mrs. Waters was that there was a space of three feet on the pavement that the plaintiff could have used, and not walked over the gate; the plaintiff, therefore, adopted the dangerous way, which danger, if there was any, was patent, and he was injured thereby.

2. That the jury disregarded the law as given by the Court when they found as they must have, that the sidewalk had been accepted by the city; the error being: That plain-

tiff's counsel admitted that the sidewalk had never been worked or repaired by the city, but claimed that it ought to have done so; and in connection with counsel's admission Mr. R. E. Melton testified that the sidewalk belonged to his wife and he had set the fence back six feet so the people could use it; there was, therefore, not only no evidence that the city had accepted or controlled the sidewalk, but there was uncontradicted testimony that the sidewalk belonged to a private individual, and the city had no control or right thereon.

3. That the jury disregarded the law as given them by the Court, in that the Court charged that, even though an obstruction is in a street, the city has a reasonable time in which to remove same, or the obstruction must have been in the street a sufficient length of time for the city to have known same, or a sufficient time for an inspection thereof, when the testimony was uncontradicted that the gate was hanging at 5:30 in the morning, and the accident occurred at 6:20 the same morning, making it impossible for the city to have ascertained that the obstruction was there, and there is no testimony that the city was ever notified, or could have been notified, of any such obstruction.

4. The plaintiff, being required to prove all allegations of the complaint by the preponderance of the testimony, failed to do so.

5. The plaintiff contended that the fence and gate was swagging and the posts rotten, and that this could have been ascertained by the city by an inspection, and requiring the fence and gate to be removed, was negligence; whereas, the law is that the city has no right to enter upon private property to remove a fence or gate, and, therefore, the city can only be charged with any negligence that occurred after the falling of the gate at 5:30 a. m.

6. The testimony is uncontradicted that the plaintiff was not only negligent, but negligently contributed to his own injury, by walking into said gate after he saw it, and in not

adopting a safe way to and avoiding the gate, which he could have done.

7. That the verdict is contrary to the law and the evidence in the case.

Motion to Direct Verdict. May it please the Court: Under section 3053 of the Code, your Honor will notice that the injury must be caused by the negligent act or the mismanagement of a municipality.

The first ground of our motion to direct a verdict is that there is no testimony that there has been any neglect or mismanagement on the part of the city of Rock Hill.

The second ground, if your Honor please, the complaint charges that this was one of the accepted streets of the city of Rock Hill; and we submit to your Honor that there is absolutely no testimony that so far as the sidewalk is concerned that it is an accepted street.

Third. If there was an obstruction, and that obstruction was on an accepted street, the city had absolutely no notice of any such obstruction. The time, according to the testimony between the falling of the gate and the injury, was something like 45 or 50 minutes, early in the morning, and, no matter how alert the city may have been, no opportunity was given them to remove the obstruction.

Fourth. That the testimony shows, and is undisputed, that the plaintiff had a safe way to travel and an unsafe way, and he adopted the unsafe way.

*Messrs. Dunlap & Dunlap,* for appellant, cite: *As to defect in street:* 43 S. C. 398; 66 S. C. 442; 89 S. C. 520.

*Mr. J. Harry Foster,* for respondent, cites: *As to definition of street:* McQuillan Munc. Corp., secs. 1280, 1284, 1287; 27 A. & E. Enc. of L. 103; 106 S. W. 537; 59 N. E. 971; 7 Words & Phrases 6686; 100 Ind. 242. *Sidewalks included:* 81 S. C. 480; 84 S. C. 122; 78 S. C. 124; 89 S. C. 520; 71 S. C. 170.

April 16, 1917.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Action in tort; verdict for the plaintiff for $175; appeal by the defendant.

The right of action arises out of section 3053 of the Code of Laws, which makes a city liable for hurt to a person by reason of a defect in a street. The circumstances of the action are these: The plaintiff is a youth of 17 years; he was walking along Jones avenue in the city of Rock Hill in the early morning hours, about half past 5 o'clock, in October, 1914; there was no light of day, and the electric light was 150 or 200 feet from the place of accident; a gate, with two strands of barbed wire on it, had fallen across the pavement, though it had confessedly been down only one hour; the boy did not see it, he fell over and into it, and hurt and cut his knee and ankle.

There are four exceptions; let them be reported. The appellant's argument has not followed the exceptions; so we shall essay to follow the points made in the arguments rather than follow the exceptions.

1. The appellant admits in the printed argument that so much of the street as is used by horses and wheels was once dedicated to the public, and "is an accepted street in the city of Rock Hill." But the appellant insists that the sidewalk of the street "has never been or is now accepted by the city, but is a private path or sidewalk over which the city has no control." The acceptance of the sidewalk, however, may be by public user, as well as by corporate action. Elliott states it to be now "the prevailing opinion that an acceptance may be implied from a general and long-continued use by the public as of right." Roads and Streets, p. 117. The testimony tended to show much user.

2. If the appellant means to suggest that the remedy of the statute (section 3053) extends only to hurts received from defects in the driveway of a street, and not to hurts received from defects in the sidewalk of a street, that is too narrow a construction of the statute. The words of the statute are "any street, causeway, bridge or public way." A street is but an urban way; and the limits of such a way as this, from side to side, are those fixed by public user. The public may reserve and use part of the way for foot passengers and a part of the way for horses and wheels. The pavement or sidewalk is a way, and the testimony tends to show it is a public way.

It would be a strange misapplication of the law to permit a municipal corporation to escape liability because it refused to recognize its duty. When the lot holder where the gate was set his fence back six feet, as he did, and thereby dedicated that space for a sidewalk for the public, and when the public so used it as it did, then the law cast upon the corporation the duty to keep it in reasonably safe condition for use.

3. If a gate with three strands of barb wire stretched on it lies prostrate on a pavement, the Court was right to submit to the jury if that was a defect in the street. *Irvine* v. *Greenwood*, 89 S. C. 520, 72 S. E. 228, 36 L. R. A. (N. S.) 363; *Lancaster* v. *Columbia*, 104 S. C. 229, 88 S. E. 463; *Burnett* v. *Greenville*, 91 S. C. 203.

4. There is no force in the insistence that the Court charged on the facts. So much of the charge so alleged to offend was as follows:

Because of error in charging "that it is the duty of a city to exercise ordinary or due care to discover any obstruction in the street, or likely to fall across the street, and if a failure to perform this duty is negligence, and such negligence, if any, is a proximate cause of an injury

to one using the street, then the city is liable for all actual damages resulting therefrom."

The exception is so manifestly untenable as to need no discussion.

5. The printed argument of appellant has something to say about the plaintiff's own negligence in falling over the gate. But there is no exception thereabout. More than that, the Court submitted to the jury the issue of contributory negligence, and expressly charged the jury that the plaintiff could not recover "if his injuries were due to his own negligent act, or his negligence contributed to his injuries."

6. And the same is particularly true with reference to what the appellant has argued about the plaintiff's pursuit of an unsafe way when a safe way was before him. On that question the Court told the jury:

"Now, I charge you that if a man, in walking along the street, could see two ways on which he could travel, and it is obvious that one of them is dangerous, it would seem (and I charge you that is the law), if he didn't pursue the safe course, he would be guilty of negligence, if he pursued the course that was obviously unsafe."

7. The last issue is that of negligence. The respondent's attorney stated in his oral argument that the defendant's omission did not consist in failing to discover the prostrate gate, for it was down hardly one hour, but consisted in failing to discover that the post to which the gate was hinged was decayed, was leaning towards the pavement, and had been so leaning for some six months, and was likely to fall on the pavement. The defendant's argument is twofold: First, that the fence was standing off the street on a private lot, though along the line of the street, and was, therefore, not under city's control; and, second, that the testimony was not sufficient to show a lack of ordinary care in the premises.

The city was bound to keep the way reasonably safe. If the fence was immediately on the inner line of the pavement,

and likely to fall on the way, then it was a public
nuisance (Cooley on Torts, p. 607) ; and the city had
the right to abate it by entry on the lot for that pur-
pose (Cyc., p. 1218).

On the second proposition, the Court concludes that the
testimony sufficiently tended to show negligence in
the city's failure to exercise ordinary care to observe
the fence was tottering to a fall.

The judgment below is affirmed.