13619

CORRELL v. CITY OF SPARTANBURG

(169 S. E., 84)

404

January, 1932.

*Messrs. C. E. Daniel, J. N. Holcombe* and *John G. Galbraith,* for appellant,

*Messrs. Lanham & Lanham, Nichols,* and *Wyche & Russell,* for respondent,

April 11, 1933.

The opinion of the Court was delivered by Mr. Justice Bonham.

This respondent, as executrix of the will of A. B. Correll, deceased, brought this action in her own behalf and that of the children of the testator to recover damages for the death of the testator, which was caused, it was alleged, by injuries he received when he fell into a washout of the sidewalk on Palmetto Street in the City of Spartanburg. The allegations of negligence on the part of the city were: The general one of failing to provide reasonably safe sidewalk; in failing to promptly repair the dangerous hole in the undermined sidewalk and fallen pavement; in failing to provide a street light at the point of the accident; in failing to erect a barricade or fence around the hole in the sidewalk; in failing to give notice of the damage by any sign or printed warning, or the use of a red lantern, or in any other way.

The complaint further alleged that A. B. Correll did not in any way bring about his injuries or death and did not in any way contribute thereto.

The answer was a general denial, contributory negligence, and the act of God in the way of unprecedented downfall of rain.

The case was heard by Judge Grimball and a jury at the January, 1932, term of the Court of Common Pleas for Spartanburg County. At the close of the testimony for the plaintiff defendant moved for nonsuit, which was denied.

At the close of all the testimony, defendant moved for directed verdict in its favor, which motion was likewise denied. The jury rendered a verdict for plaintiff, and defendant appeals.

There are three exceptions. None of them challenges the charge of Judge Grimball.

Exception I alleges that it was error to refuse the motion for nonsuit because:

(a) The plaintiff's testimony failed to show facts and circumstances warranting a reasonable inference that Mr. Correll's death was caused or accelerated by any neglect or default by the city.

(b) The testimony conclusively shows that Mr. Correll died from duodenal ulcer and blood clot on the heart, following an operation directed solely to the relief of the ulcerous condition.

(c) The medical testimony conclusively shows that even a medical expert, acquainted with the history and advised of the fall into the hole, could not infer an aggravation of the condition causing death from the fact of the fall fifteen days earlier.

Exception II alleges error in refusing the nonsuit because:

(a) The plaintiff's evidence failed to show that the city had, or should have had, notice of the washout into which Mr. Correll is alleged to have fallen; the evidence showing further that the alleged defect was on the rim of the city in a thinly populated area.

(b) The plaintiff's evidence failed to negative contributory negligence on the part of the deceased in falling into the hole; the evidence showed that the washout could have been caused only by the rain of October 2d, and that the deceased passed the scene of the washout to and from his home to his work every day between that time and the time he is alleged to have fallen.

Exception III alleges error in refusing defendant's motion for directed verdict because:

(a), (b), (c), and (d) are substantially the same as the grounds set out in Exceptions I and II.

(e) Even had the deceased fallen into the washout, and even could it be inferred from the testimony that the fall aggravated the conditions causing his death, nevertheless the evidence shows an unprecedented rainfall of 6.93 inches on October 2, approximating the normal rainfall of the whole month, washing out sewers and bridges. Therefore the washout is attributable to the act of God and not to the negligence of the city. The rainfall was so extraordinary and so widespread in its destroying effect that the defendant could not be reasonably charged with negligence in failing to discover and repair this washout within three days.

(f) There was no evidence from which an inference of negligence on the part of the city could be drawn, because there was an unprecedented rainfall and widespread destruction in all parts of the city, and the locality of the washout on Palmetto Street was not such as to reasonably justify any apprehension there.

The issues thus made resolve themselves into these questions:

Was the city negligent; that is to say, did it know of the washout in Palmetto Street and negligently fail to repair it? Or did it negligently fail to inspect its streets after the unprecedented rains and thus fail to find the washout and repair it?

Was there evidence to show, or from which it might reasonably be inferred, that the negligence of respondent's decedent did not contribute to his injury and death?

Was the death of respondent's testator due alone to the effects of the duodenal ulcer from which he suffered, or was it induced and hastened by his fall into the washout by aggravating and reviving the ulcer?

There is little contention over the law in this case. It is accepted law that a municipality must keep its streets in reasonably safe condition for public use, and to that end must use ordinary care and reasonable diligence in inspecting and supervising its streets. It is also accepted law that one traveling the streets of a city has the right to assume that the streets are kept in reasonably safe condition. It is also true that one is not liable for damages caused by the act of God or the public enemy, if such act be the direct or proximate cause of the injury. It is the settled rule of the law in this jurisdiction that the jury is the sole judge of the facts of the case, and, if there be relevant and competent testimony on the issues, they must be submitted to the jury for determination.

An analysis of the exceptions shows that no contested questions of law are presented for determination of the Court, unless it appear that there is a total lack of evidence to support an issue; then it becomes a matter of law.

It is necessary then to scan the evidence in its relation and application to the questions ·we have suggested as determinative of the case.

Was the city negligent? Did it know of the washout, and did it negligently fail to repair it? Or did it negligently fail to ascertain the existence of the washout, and repair it?

We think it may be conceded that there is no evidence that the city knew of the washout before the accident, nor any from which it might be reasonably inferred that it knew it. But we think there is some evidence from which it might reasonably be inferred that with ordinary care and diligence in the inspection of its streets it would have ascertained the existence of this dangerous place in the street. The fact of the extraordinary and unprecedented rainfalls was sufficient to put them on guard that the streets would be damaged, especially those newly built. It should have made them especially diligent in the inspection of streets and bridges. Here was a washout in the street ap-

proximately 20 feet long, 5 or 6 feet in depth, which was there not less than three days, by defendant's computation, or not less than five or six days by plaintiff's calculation. There is some testimony that it may have been there ten days or two weeks. Does not this suggest that the jury may have inferred that the city was lacking in diligence and proper or ordinary care in the supervision of its streets in times of storm and heavy rains? Moreover, there was evidence that the street forces were at work on that street during or about the time the washout was there. There is also evidence that this street extended, by a horseshoe loop, into Otis Avenue, and a good many people used it. Mr. Deeson, an employee of the city engaged in repairing the streets, saw this defect in Palmetto Street from Connecticutt Avenue, a distance of 200 feet; this was the 10th or 11th of October. Mr. Correll fell into it the 5th of October. Yet up to that time it had not been reported to the city or repaired. This issue was properly sent to the jury.

Was there evidence from which it might reasonably be inferred that the deceased did not bring about his own injury, or did not negligently contribute thereto?

The statute (Code 1932, § 7345), which gives the right to sue a municipality for damages resulting from a defect in its streets lays the burden upon the person injured, or his representative, to plead and to prove that he did not bring about his injury or death, and did not negligently contribute thereto. If the person injured is alone when the injury occurs, this requirement of the Act can be met only by deduction or inference from the proven facts surrounding the entire affair, and the knowledge of human actions and reactions under given circumstances and conditions. If the injured person die, then and there his lips are sealed; if he survive for a time and then die, those to whom he may have detailed the circumstances of his injury may not testify to what he told them. That rule was invoked by defendant in this case. The members of Mr. Correll's family could not

testify to what he told them shortly after the accident. That is the law, and such testimony was properly excluded.

In view of that law, there could be no direct evidence here of how Mr. Correll acted or what he did at the very time of his fall into the washout. Was there evidence from which the jury might reasonably infer that he did not bring about his own injury, or did not negligently contribute thereto?

Here was a sedate business man, 56 years of age, going from his place of business to his home. It might fairly be inferred that such a man would have reasonable care for his own safety; would not blindly or carelessly walk into a place of danger of which he had notice. There is evidence that his neighbor directly across the street from him, who traveled this same street every day, did not know of the defect in the street until Mr. Correll fell into it. There is evidence that Mr. Correll rode in his car to and from his business every day, but on this occasion some member of his family had the car, and he was walking to his home about 10 o'clock on a dark night in a dimly lighted street. There is evidence that there was no barrier nor fence about the washout in the sidewalk; there was no light nor any other sign there to warn pedestrians of danger. The jury might with reason conclude that he did not bring about his injury or negligently contribute to it.

This is not an application nor an indorsement of the doctrine *res ipsa loquitur,* when upon proof of the accident the presumption of negligence arises. The application of that rule looks to speculation and conjecture. The rule is not of force in this State. In the present case there is tangible evidence from which logical and reasonable deduction may be made. It was proper to submit this issue to the jury.

Was the death of Mr. Correll due alone to the effects of the duodenal ulcer from which he suffered? Or was his death hastened by the fall into the washout, reviving and accelerating the action of the ulcer?

Here again is the conflict of testimony. It seems assured that the deceased had been afflicted with a duodenal ulcer, for which he had been treated. In 1923 the treatments practically ceased, and the ulcer ceased to be active. He was in apparent good health, and attended regularly to his business. The physicians describe the ulcer, during this period, and at the time of the fall, which is the basis of this action, as "inactive." He was not undergoing treatment for it. There is evidence that the night of the accident and immediately afterward he complained of pains in the stomach in the region of the ulcer. Twelve days after his fall he was taken to a hospital and an operation performed. It was found that the ulcer was active; that there was a perforation, and the fluid from the ulcer had leaked into the stomach. The operation was performed the 18th of October, and he died the 20th. Dr. Boyd was Mr. Correll's family physician; had treated him for the ulcer; had not treated him since 1923; considered the ulcer "inactive." This hypothetical question was asked him :

"If an ulcer had been inactive in a man for a period of six years, and he had no trouble during that time, on walking home one night he had a terrible fall, for a distance of six feet, shortly after that he had a recurrence of this ulcerated condition, which caused his death, nothing else appearing would you say the fall had anything to do with his ulcer ?" He answered: "I think the fall had something to do with it; yes, sir."

"Would you say under those conditions the fall aggravated it?" He answered: "Yes, sir."

. Under cross-examination he was asked: "As his family physician will you swear that this injury, if he sustained one, on the night of October 5th contributed in any way to his death?" He answered: "Well, that is rather a problematical question; I could not answer positively one way or the other."

On redirect examination he was asked: "If a man had received a severe fall, and if, immediately after he is alleged to have fallen, he suffered a pain that had not been there before, and which arose in the region of the ulcer, whether or not you saw any symptoms, that was a symptom that the ulcer had been affected by the fall?" He answered: "Yes, sir."

Mrs. Correll testified that when her husband came in the night of the accident he seemed to be in pain; suffering very much with his side; was nauseated; during the ten days before he went to the hospital he suffered with an irritated stomach, nausea, and loss of appetite; had a complete collapse on the 17th of October.

Dr. Sparkman, a witness for defendant, examined the deceased about six years before his death; found he had a "leaking ulcer," "small perforation"; in October, 1929, was called into consultation with Dr. Boyd; patient complained of severe abdominal pains; found evidence of the beginning of peritonitis; thought there was further damage to the ulcer and the perforation; performed the operation. On cross-examination, Dr. Sparkman was asked this hypothetical question: "Suppose a man had had the kind of ulcer you describe six years ago, had no trouble with it since, it is arrested, there is no indication or sign that it is coming back on him at all, and he starts home at night, the sidewalk gives way and he falls into a deep excavation, goes home and immediately complains of severe pains where the ulcer is in his body, he is forced to go to bed, and later is carried to the hospital, nothing else appearing, if this danger arose right after, would you not say that the fall could have had something to do with it?" He answered: "I will have to admit it could."

Dr. Sheridan, a witness for the defendant, testified that he did not think the fall affected the ulcer; but he did not think it helped it.

In the light of all of this contradictory evidence, the question whether the fall aggravated the condition of the ulcer and so contributed as a proximate cause to the death of plaintiff's testator was properly left to the jury for determination. In order to hold defendant liable, it was not necessary to prove that the fall was the only cause of the death. If it was a contributory proximate cause, it was sufficient.

"As a general rule it may be said that negligence, to render a person liable, need not be the sole cause of the injury. It is sufficient that his negligence, concurring with one or more efficient causes, other than plaintiff's fault, is the proximate cause of the injury. So that where several causes combined to produce injuries, a person is not relieved from liability because he is responsible for only one of them, it being sufficient that his negligence is an efficient cause, without which the injury would not have resulted, to as great an extent, and that such other cause is not attributable to the person injured." 45 C. J., 920, quoted with approval in *Huggins v. A. C. L. R. Co.,* 158 S. C., 501, 155 S. E., 839, 840.

"There may be a recovery upon evidence tending to show that an injury was caused by the negligence alleged in the complaint operating as a proximate cause, in conjunction with another independent proximate cause not alleged." *Settlemeyer v. Sou. Ry.,* 91 S. C., 147, 74 S. E., 137.

The exception which imputes error for failing to grant the motion for directed verdict for defendant because the evidence conclusively shows that the washout was due to the act of God, that defendant was not aware that it existed, and was not negligent thereabout, cannot be sustained. The presiding Judge correctly charged the jury on these issues; there is no exception to his charges, and there was evidence *pro* and *contra* the issue which made it a question for the jury.

We find no error. The judgment is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER concur.