14193

## LIVINGSTON v. SOUTH CAROLINA STATE HIGHWAY DEPARTMENT

(183 S. E., 8)

*Messrs. John M. Daniel, Attorney General,* and *J. Ivey Humphrey* and *M. J. Hough, Assistants Attorney General,* for appellant,

*Messrs. Thomas H. Peeples, J. Coker Anderson* and *M. E. Zeigler,* for respondent,

December 30, 1935.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The plaintiff brought this action in the County Court for Orangeburg County, against the State Highway Department for damages alleged to have been sustained by him on August 14, 1933, under the allegation that while crossing state highway No. 3, at a point north of Edisto River, he stepped into a hole on the highway containing broken glass, and as a result his right foot, ankle and leg were permanently injured.

The defendant's answer was a general denial.

The cause was tried before the County Judge and a jury, and resulted in a verdict for the plaintiff in the sum of $2,-000.00. In due course motions were made for a nonsuit, for a directed verdict, and for a new trial, and were refused.

The testimony tends to show that the dwelling house of the plaintiff is within 150 feet of the highway, on its east side, and that the plaintiff also owns a tract of land on the west side of the highway opposite his residence.

In 1931, preparatory to paving this highway, it was straightened and relocated at a point opposite the plaintiff's

dwelling. The improved highway, after it had been paved, was 72 feet wide, and paved for a width of 18 feet in its center. Before the paving was laid there was an old guard rail, consisting of upright posts six inches by six inches, with boards nailed upon them, which was located on the west side of the old road; when the paving was completed the old guard rail was removed and placed within two or three feet of the west side of the pavement, opposite plaintiff's home, in the same relative position it was in before. The shoulder or unpaved portion of the highway, where the old guard rail had been, was graded and "dressed up," and its inequalities made smooth. The posts used in the old guard rail were placed in holes four feet deep. There is some disagreement in the testimony as to whether or not these holes, after the removal of the old guard rail, were filled up by the defendant and its employees. The plaintiff testifies that they were not filled. Witnesses for the defendant testify that the holes were filled, and that some of them were tamped. This occurred in 1931, at which time the road was taken over by the State Highway Department and improved. In January of that year the defendant took up his residence at some distance north of the North Edisto River, and opposite the nothern end of the guard rail, and was living there in August, 1933, when he sustained his alleged injury.

The testimony tends to show further that at this point an old road or path debouched from the paved highway into the adjoining swamp, and extended for about a half mile to the creek, and the plaintiff used this old road in going back and forth from his home to his property on the west side of the road, where he fished and had a vegetable garden. On the afternoon of August 14, 1933, at about 7:30 o'clock, plaintiff crossed the highway opposite his house for the purpose of getting fuel. On the way back with a 10-foot stick of wood on his shoulder, when recrossing the highway, he stepped into a hole, variously estimated as being from one

to three feet distant from the old road or path, and was injured. This hole was about 16 feet from the western edge of the pavement, within the right of way, and, according to the testimony, it was completely covered by Bermuda grass which had been planted there by the defendant. The testimony tends to show that this was a hole from which one of the old guard posts had been removed and was 10 or 12 inches in diameter, and about 2½ feet deep. Plaintiff testified that he was not living at home when the old guard rail was removed, and knew nothing about the presence of the hole. The testimony shows that within the mouth of the hole, but hidden and supported by the grass, there was a broken half-gallon glass jar. When the plaintiff stepped into the hole, he sustained severe cuts from this glass. .

It appears that there were 39 holes, in all, from which the guard rail posts were removed. The testimony of the defendant tends to show that there were 99 holes in all. After the accident the maintenance engineer of the defendant was shown the hole in question by the plaintiff. He testified that it was then 2½ feet deep, but that he saw no glass; and that within a few days he had this and other holes filled in. He also stated that he knew from experience that in the course of time after a hole had been filled in with fresh dirt, not tamped, it would again sink.

The evidence in the case tends to establish these salient facts: (a) State highway No. 3 is a public highway, constructed and maintained by the defendant, and bisecting plaintiff's lands; (b) that an old road or path, used by pedestrians, sometimes by wagons, and possibly by automobiles, debouched at an acute angle from this highway directly opposite plaintiff's dwelling, leading into the swamp, and ferquented by persons going fishing, and otherwise; (c) that a hole was left in the highway by the defendant, its agents and servants, within one to three feet of this old wagon road or path, which hole was 16 feet from the west side

of the paving, and constituted one of a line of thirty-nine holes marking the course of the old guard rail; (d) that the defendant "dressed up" and scraped the surface of the highway from the west side of the paving, up to the line of holes where the old guard rail had been; (e) that the hole, at the time of the accident, was hidden from view by a covering of Bermuda grass, and was about 2½ feet deep, and 10 or 12 inches in diameter; (f) that the plaintiff stepped into the hole in close proximity to the old wagon road; and this hole, after the accident, was found to be about 2½ feet deep, as shown by the testimony of defendant's maintenance engineer; (g) that it was filled in by the defendant after the accident; (h) that the plaintiff knew nothing of the presence of the hole.

The defendant is appealing to this Court from the judgment entered up, and the first question presented for our consideration is this: Is the State Highway Department liable for damages to persons who are injured while entering upon its highways from adjoining lands, where such injury is caused by stepping into a hole on the right of way near a private path, but 16 feet from the paved part of the road maintained and used for travel?

The action was brought under section 5887 of the Code of 1932, which provides that the State Highway Department shall be liable in damages to any person who may suffer injury to his person or property by reason of a defect in any State highway or by reason of the negligent repair of any State highway, it being provided therein that the person bringing the suit against the State Highway Department under this section must allege and prove that he, she, or it did not bring about the injury by his, her or its own negligence, nor negligently contributed thereto.

It is contended by the appellant that while the minimum right of way of 66 feet is required, except under certain conditions not present in this case, it is left to the discretion of the Highway Department as to the width of the roadbed

which it may pave and set aside for travel, the additional right of way not used for travel being for the purpose of enabling the Highway Department to properly construct and maintain the paved or traveled part; and that it logically follows that the Highway Department's duty to the traveling public is limited to keeping the traveled part of the highways as designated by it in proper repair.

The appellant contends, further, that it is not liable for injuries suffered by reason of defects in its highways or by reason of the negligent repair thereof, unless such injuries occur on the part of the highways maintained for travel (that is, the paved portion) or in such close proximity thereto as to be unavoidable to one using the traveled part; and that, consequently, defendant is not liable for injuries sustained on the right of way of its highways, nor on or near private paths or ways.

It is suggested that the direct question involved in this case has not been heretofore passed upon by this Court. An examination of many cases shows that the Courts of other jurisdictions are not in agreement concerning the precise liability of municipalities and highway departments with respect to the contention made by the appellant.

In *Steverson v. Orangeburg County*, 128 S. C., 335, 121 S. E., 789, 790, the action was brought for damages suffered by the plaintiff, resulting from a defective culvert at an interesection of a neighborhood road with the county highway. The culvert consisted of a galvanized pipe alongside of the highway, and at the point of the intersection. The county raised the point in that case that the galvanized pipe was not in the traveled portion of the highway. The Circuit Judge refused to direct a verdict in favor of the county, and this Court sustained such refusal. The Court said: "The county cannot dig ditches or build fences along its highway and exclude the people living along the way from the use of the highway. There must be crossings, and the county has exclusive control of that portion that is upon the public highway. The traveler coming to a public highway,

intending to travel thereon, is using the public highway as a public highway from the time he crosses the line until he leaves it."

In the instant case it should be borne in mind that the appellant not only maintained the paved central strip of this public highway for travel, but the testimony shows that it graded, "dressed up," and made smooth the shoulder which extended alongside the paving for a width of 16 feet —the appellant's witnesses having testified that this grading process extended to the line formerly occupied by the old guard rail. It also appears that the hole into which the respondent stepped was in this old line, and within one to three feet of the old wagon road frequently used by the respondent and other persons for the purpose of going into the swamp to fish, etc.

■ By grading and placing in condition for travel the unpaved shoulder portion of the highway, the appellant must be held to have impliedly invited travel by the public. The section of the Code under which this action was brought does not limit the right of the traveling public to the paved portion only of the highway. The immediately producing cause of the accident in the present case was the presence of the hole in the highway, which was left there by the appellant, at the place where the accident occurred. If this was an act of negligence on the part of the appellant, it follows that the appellant is responsible and this was a question which was within the province of the jury alone to determine. We cannot say that there was no evidence to support the verdict.

The appellant contends that the traveling public, pedestrian and vehicular, should be confined to the use of the paved central strip or the paths running immediately alongside thereof. The adoption of this rule, certainly as to pedestrians, would be unjustified in the light of experience, and in view of present-day traffic conditions upon our highways. There is an ever-present danger to the foot traveler upon the

pavement from all manner of motor vehicles, moving with every variety of speed. Pedestrians in the lawful use of state highways, especially at night, should not be restricted within such narrow limits unless the statute clearly requires such construction, and we find no provision therein which would warrant us in so holding. If they took counsel of wisdom, or had due regard for life and limb they would steer a reasonably safe course from the paving and from the traveled path which runs in such deadly proximity thereto. Pedestrians have a right, of course, exercising ordinary care, to walk in this dangerous area. They also have an unquestioned right under our present highway laws to use any portion of the highway which may be maintained for travel by the State Highway authorities, for legitimate purposes of travel. No law now extant forbids it. The rule of reason and the law of self-preservation favor it.

We do not say that the liability and duty of the appellant to keep its highways in a reasonably safe condtion for travel, free from defects, and in reasonably good repair, extend to the uttermost width of its right of way. The law, however, does require the appellant to maintain in a reasonably safe condition for travel that portion of its roadbed which is set aside and maintained in such condition as to invite its use for travel by the public, whether paved or unpaved.

The duty resting upon the State Highway Department is not fully discharged by making the traveled part of the highway safe, but such measures as ordinary prudence requires must be taken to prevent persons, using ordinary care, from falling into dangerous places along the widest of that portion of the roadbed set apart and maintained for travel thereon by the public.

The appellant further contends that the proximate cause of appellant's injury was broken glass at the mouth of the hole and in the hole itself, there being no testimony that the appellant knew anything about the

presence of the glass, or had anything to do with placing it there.

We cannot agree to this. When two causes combine to produce an injury to a traveler on a highway, both of which are in their nature proximate, the one being a culpable defect in the highway, and the other some occurrence for which neither party is responsible, the Highway Department is liable, provided the injury would not have happened but for such defect. See elaborate note, *Gibson v. Delaware, etc., Canal Co.,* 36 Am. St. Rep., 836; also 29 C. J., § 456, page 693.

There was sufficient testimony in this case to go to the jury, and the County Court was fully warranted in refusing the motions for a nonsuit, a directed verdict, and for a new trial.

Finally, the appellant imputes error to the County Judge because of his refusal to charge the following request in the following language: "Stated in another way, if people who use a highway fail to notice a defect or something which might cause damage to someone traveling the highway, it may be presumed that the Highway Department had no notice of it. As to this hole, if you find that it was not such as would be observed by persons constantly traveling along the highways, or those in charge of repairing the highways, then you may conclude that the Highway Department had no notice of it, and therefore could not be charged with negligence in allowing it to stand."

The presiding Judge was correct in refusing to charge this request, for the reason that the Court should not charge a jury as to any presumptions or inferences that it could draw as to negligence. To have done so would have been to charge on the facts. *Weaver v. Southern Ry.,* 76 S. C., 49, 56 S. E., 657, 121 Am. St. Rep., 934.

In addition to this, it is to be observed that the hole complained of was created and left there by the appellant itself, and was not due to the negligence of any third party. If the

hole had been filled up, as some of the witnesses for the appellant testified it was, then the appellant should have anticipated that the loose dirt would settle and leave a depression, which might cause injury to one stepping into it. It was said in the case of *Morris v. Langley Mills et al.*, 121 S. C., 200, 113 S. E., 632, 36 A. L. R., 302: "The measure of a county's duty [keeping the highway tree from defects and negligent repair] is ordinary care to provide against such dangers to the traveling public as may reasonably be anticipated, having due regard to the character of the travel, the incidental purposes for which a highway may be lawfully used, and the nature of the danger at the point in question."

The question of notice to highway authorities concerning the condition of a highway or a defect therein is involved only where it has not produced the condition itself. Where the unsafe condition of a highway is caused directly by the act of the defendant or its employees, liability for injuries resulting therefrom attaches directly, and not through the doctrine of notice, either express or constructive. In such case, the Highway Department will be conclusively presumed to have had notice of the defect.

The exceptions are overruled.

It is the judgment of this Court that the judgment of the County Court be, and the same hereby is, affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.