14711

BRUCE v. CITY OF SPARTANBURG

(197 S. E., 823)

*Messrs. Odom & Bostick* and *Johnson & Johnson,* for appellant,

*Mr. John C. Williams,* for respondent,

June 30, 1938.

The opinion of the Court was delivered by Mr. Chief Justice Stabler.

The plaintiff in this action seeks to recover damages for personal injuries alleged to have been sustained by her as the result of negligence on the part of the defendant in the maintenance of one of its streets. The answer of the city was a denial of the material allegations of the complaint. At the proper stage of the trial of the case, November 3, 1937, the defendant moved for a directed verdict. The mo-

tion was refused, and the jury found for the plaintiff $1,-500.00. A new trial was also denied, and this appeal followed.

Counsel for the appellant argue two questions, which we will consider in the order stated by them: 1. Was the evidence sufficient to support the action and to warrant a finding of actionable negligence on the part of the city? 2. Was the amount of the verdict excessive?

First. This suit was brought under Section 7345 of the Code of 1932, which gives a right of action against a municipality in favor of one injured "through a defect in any street," etc. The plaintiff alleged that on January 17, 1936, she was riding in an automobile of one Griffin, a taxi driver, upon a newly constructed street of the defendant, leading from Woodward Avenue into Pine Street; that prior to that date the city had dug a sewerage line across this street, and in refilling the sewer ditch had negligently failed to pack the dirt on the fill but allowed it to remain in a loose and fluffly condition; that "when snow and rain fell thereon," which had happened, the dirt sank below the level of the street, causing a dip or ditch "which was obscure to the driver of said vehicle and to the plaintiff herein"; and that Griffin, on the occasion named, while driving at a legal rate of speed, ran into this ditch, and that the plaintiff was hurled against the top of the automobile and suffered painful and serious injuries, which were due to the negligence of the defendant in failing to keep such street reasonably safe for travel by the general public and by the plaintiff.

The testimony, to some of which we will briefly refer, tended to establish the allegations of the complaint. The plaintiff stated that on January 17, 1936, she was riding on the back seat of Griffin's automobile, and that when they reached the street "off of Pine," and were going "up a rise," they came to a ditch that extended across the street, but which they could not see; that the car "dropped down" into this ditch and that she was thrown against the "door or something," and that her back was injured to such an extent that

she had to stay in the Mary Black Hospital for eight days, and was still unable to work at the time of the trial, which was nearly two years thereafter. Griffin, the driver and owner of the automobile, testified that he was taking the plaintiff to her home on the night of the accident; that he went "down Kennedy into Pine and went on this street where it had been newly worked," and which was within the city limits; that the "street was muddy and I was in low gear and as soon as I thought I was out of it I changed my gear and the car fell in the ditch with the back wheels," and that the plaintiff was on the back seat and received "the biggest jolt"; that the ditch was all the way across the street and there was no sign at all there to warn a traveler of its presence; and that the next morning he went back to this place with Mr. Lancaster, an attorney of Spartanburg, "to show him where it happened." Lancaster stated that he went with Griffin the day following this injury to Pine Street and into a "newly made street right off of Pine," which he learned later "was Woodland Street or something like that"; that "you go to the top of the hill and it looked like an extension of another street"; that this was the only road that he went with Griffin that day, and that when they arrived at the place and Griffin stopped the car, the witness got out and looked at it, and "it was apparently a ditch cut across this street completely"; that "where it crossed the sidewalk the dirt had sunk knee deep," and that where it "cut across the street" there was a dip which he estimated to be "six or eight inches deep."

E. E. Gentry, a witness for the defendant, testified that in January, 1936, he lived at "the corner of Pine and Woodland"; that "I had to pass over the ditch three or four times a day when I lived there. It was right after the snow and rain and I drove over all the roads adjoining this property. I did not notice it being deep." He further stated that if the accident occurred on January 17th, as testified to, the street had been built by the city before then; and that the defendant had repaired it and had supervision over it.

This Court has held that "the 'neglect' mentioned in the statute is the same as negligence, which is the want of ordinary care" (*Berry v. City of Greenville*, 84 S. C., 122, 65 S. E., 1030, 1031, 19 Ann. Cas., 978); "that negligence in the repair of a street may consist in omission or nonaction" (*Stone v. City of Florence*, 94 S. C., 375, 78 S. E., 23, 24); that "the duty is on the municipal corporation to keep its streets reasonably safe for use by those entitled thereto" (*Walsh v. Dawson Engineering Co.*, 159 S. C., 425, 157 S. E., 447, 448); and that "person using city streets, although held to exercise of due care therein, has right to assume city has discharged and has exercised ordinary care in keeping streets in reasonably safe condition" (*Lynch v. City of Spartanburg*, 139 S. C., 295, 137 S. E., 743). See, also, *Caston v. Rock Hill*, 107 S. C., 124, 92 S. E., 191; *Patrick v. City Council of Charleston*, 164 S. C., 507, 162 S. E., 749; *Terrell v. City of Orangeburg*, 176 S. C., 518, 180 S. E., 670.

Under the above-stated applicable principles of law, the question of the city's negligence in the case at bar, in failing to exercise, in the circumstances disclosed by the testimony, ordinary care in keeping the street in a reasonably safe condition for travel, was undoubtedly one for the jury. One of the main grounds of appellant's contention is that there was no evidence showing that the defendant had any notice of the alleged defect prior to the time of the accident. Conceding that there was no testimony that the city knew of the alleged dangerous place in this street before the injury occurred, there was some evidence from which it could be reasonably inferred that had the defendant exercised ordinary care and diligence in the inspection of the street, as was its duty to do, it would have learned of the existence of such defect. There was no evidence that any such inspection had been made. The city knew that the street was a newly developed one, that a deep sewer ditch had been cut across it, that the ditch had been filled in with loose earth, and that the rain and melting snow

and ice might cause this earth or dirt to sink and thus create a dangerous place in the street. This was sufficient to put the city on notice that diligent inspection on its part of such road, a newly built one, was necessary and required. See *Correll v. City of Spartanburg,* 169 S. C., 403, 169 S. E., 84, where Mr. Justice Bonham, speaking for the Court, disposed of a similar question adversely to the contentions of the city.

Second. With regard to this question, the testimony of the plaintiff, herself, as we have already indicated, was to the effect that her back was painfully injured in the accident; that she was treated for her injuries at the hospital for eight days, and also received treatments after she left there; that, although she had been working, doing manual labor, before she was hurt, she had not been able to do anything since then except a little cooking, and that she had to sit down even to do that. Dr. Hugh Black testified that he attended the plaintiff at the Mary Black Hospital in 1936; that she had "a wrenched and strained back. Leg pulled and stretched"; that "she was brought in suffering excruciating pain. Required a hypodermic and I think stayed a week and during that first two or three days she suffered excruciatingly"; that "we put her to bed and gave her some sedatives and gave therapy treatments, baking, massage and electric treatments," and that after she left the hospital she came back for other treatments; that he thought the plaintiff would still have trouble with her back, for "once it is wrenched at times a quick shock or lift is liable to exaggerate it." While the witness did not state whether he considered the respondent's injury a permanent one or not, he did say that his own injury, a similar one, would cause a disability that would stay with him.

Under this testimony, the trial Judge held that the amount awarded the plaintiff by the jury was not excessive; and the appellant has failed to convince us that he was wrong in this. Certainly, while the size of the verdict may seem somewhat large, we cannot say as a matter of law that Judge Mer-

chant abused his discretion in refusing to set it aside and to grant a new trial on that ground.

All exceptions are overruled and the judgment of the Court below is affirmed.

MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE G. B. GREENE concur.

MR. JUSTICE CARTER did not participate on account of illness.