17329

RUTH W. FLOYD, Respondent, v. The TOWN OF LAKE CITY, Appellant

(99 S. E. (2d) 181)

518

*Messrs. R. R. Whitlock,* of Lake City, and *William H. Blackwell,* of Florence, *for Appellant,*

*Messrs. Arrowsmith & Palles,* of Florence, *for Respondent,*

July 23, 1957.

LEGGE, Justice.

In this action by a pedestrian against a municipality, under Code 1952, Section 47-70, for personal injuries sustained when a manhole cover, located in the grassplot between the sidewalk and the curb of a street, turned as she stepped on

it, the jury found for the plaintiff. The municipality appeals, contending:

1. That there was no proof of actionable negligence;

2. That the evidence showed that the plaintiff was guilty of contributory negligence as a matter of law; and

3. That the trial judge erred in ruling: (a) that the grassplot was part of the street within the meaning of the statute, and (b) that the municipality was not relieved of liability by its ordinance prohibiting trespass thereon.

South Church Street in the Town of Lake City runs north and south; and in the block in question its paved roadway is about 24 feet in width from curb to curb. On either side, between the curb and the paved sidewalk, is a grassplot approximately four feet in width. At the junction of South Church with a street (not named in the record) that runs west from it there is, on the northwest corner, a one-story brick building occupied as a doctor's office, its entrance being on South Church Street; just north of this building is an open lot; and to the north of the lot is the place of business of a motor transport company. At the time of the accident there was in the grassplot between the curb and the sidewalk in front of the open lot a heavy circular iron grating, at least two feet in diameter, covering the manhole of a storm drain. On the east side of South Church Street, opposite the properties just mentioned, is the Lake City Baptist Church.

The only eye-witnesses to the accident were the plaintiff and a Mrs. Matthews. Their testimony was substantially as follows:

On the afternoon of Wednesday, March 30, 1955, about 3:30 o'clock, Mrs. Matthews and Mrs. Floyd went, in the former's automobile, to attend a revival service at the Lake City Baptist Church. Mrs. Matthews drove; Mrs. Floyd sat on the front seat at her right. Having driven southward on South Church Street, Mrs. Matthews parked the car at the curb, and parallel to it, on the west side of the street in front of the open lot before mentioned. Although neither she nor

Mrs. Floyd appears to have noticed it at that time, the position of the car after parking was such that the manhole cover in the grassplot lay opposite the right front wheel. Mrs. Floyd opened the right front door, got out, and went to the sidewalk, where she was joined by Mrs. Matthews, who had gotten out on the left side and had walked around the back of the car. They then walked to the corner, crossed to the east side of South Church Street, and went to the church. The service lasted about thirty minutes; and at its conclusion they walked on the east side of South Church Street to a point opposite the parked car, and crossed over to it, Mrs. Matthews getting in through the left front door, Mrs. Floyd walking around the front of the car and up on the grassplot to get in through the right front door. In so doing, Mrs. Floyd stepped on the manhole cover, which thereupon turned under her weight, causing her to fall, her right leg going down into the manhole, and the cover pinning it against the side of the opening. Mrs. Matthews got out of the car and went to her assistance, and was joined by a Mrs. Cantey, who, leaving the church, had seen Mrs. Floyd's plight. Mrs. Cantey was unable to lift the cover because of its weight; but she tilted it sufficiently to enable Mrs. Floyd, with the help of Mrs. Matthews, to extricate herself. Mrs. Floyd testified that when she had gotten out of the car on her way to the church she had not noticed the manhole cover; and that on her way back to the car she saw it and knew that she was going to step on it because it was directly in her path, but that she noticed nothing wrong with it. After having taken Mrs. Floyd to her home, Mrs. Matthews returned to the scene of the accident with the superintendent of the street department. She observed around the outer rim of the manhole cover loose earth, as if recently moved by digging. The cover was in place and the superintendent removed it. She testified that near the top of the base of the manhole was a rim or flange upon which the cover rested; and that when the cover was in place it was steady and flush with the top of the base. Mrs. Matthews also testified that in the course of her frequent trips to the church she usually parked her car at about

the same place that she had parked it on the occasion of the accident; and that a few days before the accident she had seen a crew of workmen, with one of the town's officials, working at the manhole in question.

For the defendant, Mr. Conyers, an employee of the street department, testified that the manhole in question is part of a storm drain; that he was in charge of inspection of all of the town's storm drains and of the cleaning out of the manholes, which was usually done two or three times a month, dependent upon the accumulation of leaves and trash in them; that he had under him a crew of workmen who under his direction and supervision attended to the cleaning of the manholes and replacement of the covers; and that this particular manhole had been cleaned out, its covering being removed and replaced, at least twice during the month of March, 1955, prior to the accident. He testified that in the course of cleaning out, dirt deposited around the manhole is removed, but the fact that the soil has been freshly moved is apparent after the cover has been replaced. The chief of police, the mayor, and the superintendent of streets also testified for the defendant to the effect that no complaint or report of any defect concerning the manhole cover in question had come to their attention prior to the accident.

Admitted in evidence was an ordinance of the Town of Lake City reading as follows:

"All such places as lie between the street curbing and the sidewalks of the city are hereby declared to be parkways. It shall be unlawful for any person to trespass upon, walk, ride, cross or to allow any horse or other animal, automobile, or other vehicle to pass over, stand upon or otherwise trespass on any of the parkways in the city, or to pick, damage or injure any flowers, shrubbery or grass growing on such parkways. Any person violating any of the provisions of this section shall be guilty of a misdemeanor."

The record does not reveal when this ordinance was enacted, but it is apparently conceded that its enactment was

prior to the accident. The only witness who testified concerning this ordinance was Mr. M. A. Hinds, who was Chief of Police at the time of the accident. As to how long he had been Chief of Police the record is silent. He testified under cross examination that he knew of no ordinance forbidding pedestrians to walk across or upon the grassplot in question; that if such an ordinance existed it was not enforced; that there were no signs prohibiting trespass upon the grassplot; that South Church Street is much traveled by both vehicles and pedestrians; and that during the bean season the grassplot is used as a marketplace.

Section 47-70 of the 1952 Code provides that any person who shall sustain personal injury or property damage by reason of "a defect in any street, causeway, bridge or public way or by reason of a defect or mismanagement of anything under control of the corporation within the limits of any city or town" may, if such injury or damage shall not have been brought about or contributed to by his own negligence, recover in an action against such municipality the amount of actual damages so sustained. The city's liability under this statute is predicated upon its duty to maintain its streets and other public ways in reasonable repair for the purpose of travel. The words "anything under control of the corporation" do not enlarge the field of liability beyond that purpose; they relate to instrumentalities used in the maintenance and repair of streets for the purposes of travel. *Reeves v. City of Easley*, 167 S. C. 231, 166 S. E. 120; *Abernathy v. City of Columbia*, 213 S. C. 68, 48 S. E. (2d) 585; *Hicks v. City of Columbia*, 225 S. C. 553, 83 S. E. (2d) 199.

The strip of ground lying between a sidewalk and the curbing, variously referred to as "parkway", "parking", or "grassplot"; is generally recognized as primarily designed not for travel, but as an area wherein necessary public utilities may be installed and where grass, flowers, shrubbery, and trees may be grown for beautification of the street. Because its primary function is not to serve as

a place for pedestrian travel, the city is not required to keep it, and those who walk upon it must not expect to find it, as free of obstructions and as smooth of surface as the sidewalk or other portion of the street that is designed for such travel. But it does not follow that the city is immune from liability for injury caused by its negligence to one who walks upon or across such an area. The "grassplot", by its very location, invites some pedestrian travel. For example, a passenger alighting from a vehicle that has parked at the curb must either cross the "grassplot" or risk walking in the vehicular traffic of the street until he reaches a driveway or an intersecting street. Compare *Livingston v. S. C. State Highway Department,* 178 S. C. 323, 183 S. E. 8, where a pedestrian was injured when he stepped in a hole on a graded, unpaved shoulder 16 feet wide along the side of a paved highway.

Subject to the requirements of its primary function before mentioned, and to the consequent difference in the character of its maintenance required of the city as compared with the city's duty in relation to sidewalks, the "grassplot" is still a part of the street within the scope of Section 47-70. In furtherance of its utilitarian and ornamental purposes, the city may fence or barricade it, and such obstructions to pedestrian use, if properly constructed and maintained, are not defects within the meaning of the statute, 25 Am. Jur., Highways, Section 407, pp. 702, 703; Annotation 19 A. L. R. (2d) 1053 *et seq.;* but it may not, by the mere passage of an ordinance, as in the case at bar, declaring all such areas to be parkways and prohibiting trespass upon them, attain immunity from liability under the statute for injury or damage caused by its negligence.

Appellant cites *City of Tuscaloosa v. Fair,,* 1936, 232 Ala. 129, 167 So. 276, 279, in support of its contention that the ordinance here absolved it from liability, and quotes from the opinion in that case as follows:

"The city may prohibit walking on such space designated and marked, and, when so, it is said not to be liable for injuries caused by a defect. 13 R. C. L. p. 260, § 214."

But the quoted statement was only dictum, as no prohibitory ordinance was involved in that case. We note, additionally, that the R.C.L. text cited does not warrant the implication that a city may insulate itself from liability by the passage of such an ordinance. To quote its pertinent portion:

"Thus it (a city) may maintain, or permit to be maintained, park strips between the curbing and the paved street and the pavement of the sidewalk, in which grass strips, flowers and trees may be grown for the purpose of beautifying and ornamenting the streets of the city and contributing to the pleasure and comfort of its citizens, and such trees, grass and flowers growing upon such park strips are not obstructions or nuisances. It may also, if it deems necessary, construct or permit to be constructed proper barriers around such strips to prevent travel thereon, and proper barriers constructed for that purpose are not obstructions or nuisances, provided they are not so constructed or maintained as to become dangerous to travelers."

It is interesting to note that in 25 Am. Jur., Highways, Section 407, pp. 702, 703, *City of Tuscaloosa v. Fair, supra,* is the only decision cited as authority for the statement that: "Conversely, there is no such duty or liability where the use of such a strip for the purpose of travel is lawfully prohibited". And also, that the case under discussion is the only one cited as authority for the statement in 63 C. J. S., Municipal Corporations, § 794 b (1), p. 107, that: "However, a city may prohibit walking on a parkway or grassplot, and, when it does so, it is not liable for injuries caused by a defect therein". Thus may dictum, unsupported by authority, assume the appearance of precedent.

Negligence of a municipality giving rise to its liability under Section 47-70 may be either active or passive. Where a defect or dangerous condition, not created by its act or that of its agents, has existed for such length of time that in the exercise of reasonable care the city should have discovered, and remedied, it, it is constructively chargeable with knowledge of such defect and consequently with

negligence in not having remedied it. 25 Am. Jur., Highways, Section 420, p. 714; *Caston v. City of Rock Hill*, 107 S. C. 124, 92 S. E. 191; *Bruce v. City of Spartanburg*, 187 S. C. 322, 197 S. E. 823.

We think that the evidence on the part of the plaintiff was sufficient to carry the issue of the city's negligence to the jury. It was circumstantial, to be sure, but it was enough to warrant the reasonable inference that the city's agents, who a few days before the accident had been cleaning out the manhole in question, had failed to replace its cover securely. In civil cases, where circumstantial evidence is relied upon, the facts proved need not be such as to exclude every other conclusion than that sought to be established; proof of circumstances reasonably warranting the inference contended for is sufficient. *Brown v. Brown*, 215 S. C. 502, 56 S. E. (2d) 330, 15 A. L. R. (2d) 163; *Morrow v. Evans*, 223 S. C. 288, 75 S. E. (2d) 598; *Troy Cemetery Ass'n v. Davis*, 223 S. C. 305, 75 S. E. (2d) 458.

The instant case is not controlled by *Driggers v. City of Florence*, 190 S. C. 309, 2 S. E. (2d) 790. In that case the plaintiff was injured as the result of stepping into an open water-meter box in a grassplot between the dirt sidewalk and the roadway of the street. There was no evidence tending to show that the box had been opened by any agent of the city, or that the city had actual notice otherwise that its cover was off; and the only testimony by which it was sought to establish negligence on the part of the city was to the effect that the meter box had been seen open about two hours before the accident. The trial court, holding that this evidence was insufficient to warrant a finding that the city had constructive notice of the defect, granted a nonsuit; and its judgment was affirmed on appeal.

The evidence for the plaintiff in the case at bar is more definite on the issue of negligence than was that in *Crosby v. City of Chester*, 197 S. C. 66, 14 S. E. (2d) 552, where a pedestrian sued for injuries sustained as the result of stepping, in the nighttime, into an open manhole in the grass-

covered shoulder of a street. Although there was no evidence as to when the heavy manhole cover had been removed, it was held that the issue of negligence was properly submitted to the jury because: (1) the manhole or valve-box had been installed by the city; and (2) there was evidence tending to show (a) lack of proper inspection, and (b) failure to maintain the shoulder in reasonably safe condition for necessary pedestrian use.

It is true that Section 47-70 casts upon the plaintiff in an action such as this the burden of proving his freedom from contributory negligence, *Young v. City of Camden,* 187 S. C. 414, 198 S. E. 45, and that nonsuit is proper unless his evidence tends to negate such negligence, *Barksdale v. City of Laurens,* 58 S. C. 413, 36 S. E. 661. But it is well settled that the issue of the plaintiff's contributory negligence is for the jury unless there is a total lack of evidence in support of the plaintiff's allegation of freedom therefrom, *Rowland v. Town of Dillon,* 188 S. C. 408, 199 S. E. 525. In the case at bar the evidence, to which we have referred at some length, was quite sufficient to carry that issue to the jury.

Affirmed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.