14678

JENKINS v. PILOT LIFE INS. CO.

(197 S. E., 28)

October, 1936.

*Messrs. Knight & Arant,* for appellant-respondent,

*Mr. James E. Leppard,* for respondent-appellant,

May 3, 1938.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This action was brought by the plaintiff against the defendant for the recovery of actual and punitive damages for the alleged unlawful and fraudulent breach of a contract of insurance issued upon the life of the plaintiff by the defendant. The jury rendered a verdict for the plaintiff in the sum of $500.00 actual damages, and $200.00 punitive damages. ·

During the course of the trial, the defendant made un-

successful motions for a nonsuit and for a directed verdict. And after the publication of the verdict it made a motion for a new trial upon substantially the same grounds as were advanced in its motions. In passing upon the motion for a new trial, the trial Judge stated in his order that, "after a careful consideration of the evidence in the case, I have reached the decision that there is ample evidence to sustain the verdict for actual damages, but there is no evidence to sustain a verdict for punitive damages, and that defendant's motion for a directed verdict as to punitive damages should have been granted by me when it was made."

He thereupon refused the motion as to actual damages, and ordered that judgment be entered for the defendant as to punitive damages, without allowing the plaintiff the option of a new trial *nisi*.

There are several appeals and cross-appeals growing out of the main issues, and arising from an order subsequently made by his Honor, Judge Dennis, in settling the case for appeal.

We shall first discuss what we regard as the vital issue made in the case by the exceptions on appeal. The solution of this question will for all practical purposes determine the case.

Did the Court err in refusing to direct a verdict for the defendant on both the issue of actual damages and punitive damages? Our attention will first be directed to the question of actual damages. The determination of this issue depends upon whether there was any evidence from which the jury could draw a reasonable inference that the defendant waived the prompt payment of premiums and wrongfully breached the contract of insurance.

The plaintiff paid ten annual premiums of $62.51 each. Before the eleventh annual premium fell due, on October 6, 1933, the plaintiff arranged with the defendant for an extension of the days of grace to January 6, 1934. On or before the 6th day of January, 1934, the plaintiff arranged for

an additional extension of the days of grace until April 6, 1934; and on that date arranged a further extension of the days of grace until June 6, 1934; each extension period being had upon the payment by the plaintiff of a fractional part of the premium which fell due on October 6, 1933. This litigation springs from what occurred on June 6, 1934.

The defendant contends that the policy lapsed for the nonpayment of $38.63, which was the remainder due on the premium and which became due and payable on June 6, 1934. The plaintiff contends that the defendant breached the said agreement which it made with the plaintiff on June 6, 1934, to make him a policy loan in the sum of $322.00, and to accept the proceeds of such loan and $8.87 as payment in full on the existing policy loan and interest, which items included the sum of $38.63, balance due on the 1933 premium and interest. The plaintiff further contends that the policy at that time, by reason of the conduct of the defendant, was in full force and effect, by reason of the fact that the defendant had waived the prompt and punctual payment of the quarterly premium.

With reference to the receipt by it of the loan agreement and of plaintiff's check for $8.87, the defendant asserts that they were not received in time.

The issue under discussion will be made clearer by a brief reference to the facts.

On October 6, 1932, the plaintiff procured a policy loan for $281.00, which became due on October 6, 1933, with interest from that date at six per cent. per annum. On June 6, 1934, which was the last day of the extension period, the plaintiff went to the office of Mr. Duke, the defendant's general soliciting agent at Pageland, and requested him to arrange a further policy loan sufficient to pay the previous policy loan referred to, and the sum of $38.63 which was due on that date. Pursuant to this request Mr. Duke on the same day wrote and mailed a letter to the home office of the defendant, requesting it to forward the necessary papers for this purpose direct to the plaintiff for execution.

In response to this letter the defendant, on June 11, 1934, wrote the following letter to the plaintiff:

"RE: POLICY No. 53 674

"At the request of Mr. C. M. Duke we are enclosing loan papers filled in for the full loan value which amounts to $322.00. This covers the former loan and interest of $292.24, and part of the balance of the October 6, 1933, annual premium, leaving a balance of $8.87 that you will have to pay in cash to supplement the loan papers.

"Please complete these papers by having your signature witnessed by some disinterested person, not a relative, and return both copies to us with your check for $8.87."

The plaintiff upon receipt of this letter executed and returned to the defendant the loan agreement and a cashier's check for $8.87, which were received by the defendant on June 25, 1934.

On that day, in a letter to the plaintiff, the defendant acknowledged receipt of the loan agreement and the payment of $8.87, but stated that since this settlement was not made on time, it would be necessary for the plaintiff to furnish current evidence of his insurability. Thereafter, they rejected his reinstatement, upon the ground that he was not a good insurance risk.

On the trial of the case the assistant treasurer of the defendant testified that the reason that the defendant refused to accept the loan agreement and check in settlement of the premium was that they were not received in the home office on or before June 6, 1934.

It is difficult, if not impossible, to reconcile the defendant's conduct with its contention that the loan agreement and the check were not received in time. The defendant asserts that these papers, which it is admitted would have completed the payment of the premium due, had to be received at the home office on or before June 6, 1934; yet, five days after this, on June 11, 1934, in response to a letter from its general soliciting agent, it sent a letter to the plaintiff en-

closing a loan agreement which it told him to execute and return with his check for $8.87, which would take care of his previous loan and the balance of the premium due.

Under these circumstances, it was for the jury to say whether the defendant had waived the punctual payment of the balance of the 1933 premium and wrongfully breached the contract. See *Welch v. Missouri State Life Ins. Co.*, 176 S. C., 494, 180 S. E., 447. There was also other testimony strongly tending to show that the defendant had waived prompt payment of the premiums on the prior extension agreements.

We agree with the lower Court that this issue was properly submitted to the jury.

After a very careful examination of the evidence in this case and all inferences growing thereout, viewed in the light most favorable to the plaintiff, we are convinced that the lower Court erred in refusing to grant the motion of the defendant, made on trial, for a directed verdict on the cause of action for punitive damages. The trial Judge later attempted to correct this error in his order overruling the motion made for a new trial, by ordering that judgment be entered in favor of the defendant on that issue. The correct result has thus been accomplished by the judgment entered below with reference to this matter, though irregularly rendered. Generally, the Court on finding cause for setting aside a verdict should order a new trial rather than render judgment for the movant.

In the case of *Gwathmey v. Foor Hotel Co.*, 121 S. C., 237, 113 S. E., 688, the defendant having made a motion for a new trial, the Judge passed an order, the pertinent provisions of which are as follows (page 689) : "Ordered, that the verdict for punitive damages be reduced to the sum of Five Hundred ($500.00) Dollars, and that the motion for new trial be refused."

It is to be observed that this order is very similar to that passed by the lower Court in the case at bar; the only difference being that the verdict for punitive damages in the

case referred to was reduced instead of being stricken out. In passing upon the validity of the quoted order, this Court said (page 689) : "The authority of a circuit judge to correct, modify, or interfere with the verdict of a jury in a case properly triable by jury is embraced in and limited to the power to grant new trials. Civil Code 1912, § 3831; Code Civ. Proc. 1912, § 324. Obviously, the absolute power to change or modify the findings of a jury upon an issue of fact properly submitted to them would, when exercised, amount to the substitution of the trial Judge's findings for the verdict of the jury and to the abrogation in such cases of the right of trial by jury. There being no question as to the legal right of the plaintiff in her action of tort for unliquidated damages to have the amount of damages determined by a jury, the order of the circuit judge must be adjudged erroneous in so far as it reduced the amount of the verdict without allowing the plaintiff the option of a new trial *nisi*. See, generally, *Nettles v. Harrison,* 2 McCord, 230; *Davis v. Ruff,* Cheves, 17, 34 Am. Dec., 584; *Fripp v. Martin,* 1 Speers, 236; *Warren v. Lagrone,* 12 S. C. [45], 51; *Wilson v. Railroad Co.,* 16 S. C.[587], 592; *Finch v. Finch,* 21 S. C., 342; *Levi v. Legg,* 23 S. C., 282; *Beaudrot v. Railway Co.,* 69 S. C., 160, 48 S. E., 106; *Hall v. Railroad Co.,* 81 S. C., 522, 62 S. E., 848."

And for a later discussion and review of all of the cases bearing upon this subject, see *Anderson v. Aetna Casualty & Surety Co.,* 175 S. C., 254, 178 S. E., 819.

On the strength of these cases, we think the Court below fell into error in rendering judgment for the defendant, under the circumstances stated, on the cause of action for punitive damages without giving the plaintiff the option of a new trial *nisi*. However, as already stated, the error is harmless, because the Court did then what it should have done in the first instance; namely, grant the motion of the defendant for a directed verdict on the issue of punitive damages when it was made during the course of the trial.

We do not mean to say, of course, that a trial Judge may not reserve his decision on a motion for a directed verdict until after the verdict has been rendered by the jury, but this should be done only when such procedure is agreed to by counsel engaged in the case.

Other subsidiary questions remain to be decided.

The parties being unable to agree upon the case for appeal, the matter was taken before his Honor, Judge Dennis, for settlement. Over the objection of the defendant, he ordered that the testimony of Dr. Guyton and Dr. Perry, witnesses for the plaintiff, be printed in the record. Over the objection of the plaintiff, he allowed the defendant to serve and file an additional exception charging error in the admission of this testimony on trial. Both sides appeal, and we think there is no merit in either appeal.

The medical testimony was pertinent upon the issue of punitive damages.

The Judge committed no error in permitting the defendant to file the additional exception where it became necessary by reason of the amendment allowed in the settlement of the case for appeal.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER concur.

MR. JUSTICE CARTER did not participate on account of illness.