15250

CROSBY v. CITY OF CHESTER

(14 S. E. (2d), 552)

*Mr. Charles W. McTeer,* for appellant,

*Messrs. Hemphill & Hemphill,* for respondent,

April 30, 1941.

The opinion of the Court was delivered by MR. ASSO-CIATE JUSTICE BAKER.

This is an action for personal injuries and is brought un-der Section 7345 of the Code of South Carolina of 1932.

The complaint alleges that respondent, due to the negli-gence, carelessness and mismanagement of the appellant city, its agents and servants, in the maintenance, operation and control of Epworth Street in said city, was caused to suffer serious and permanent injuries.

The answer of appellant admitted that it was a municipal corporation, and at the time mentioned in the complaint had the control, management of, supervision over and mainte-nance of the street named above; and that it also had under its direct maintenance, supervision and control the water and sewerage lines which ran in, about, under and through its streets. The remainder of the answer was a general de-nial.

A trial of the case in the Circuit Court resulted in a ver-dict for plaintiff-respondent, and an appeal has been taken to this Court from the refusal of the trial Judge to grant the motion of defendant-appellant for a nonsuit (and new trial) on the grounds that the evidence affirmatively proved that respondent's injury was caused by her contributory neg-ligence; and that there was no proof of negligence on the part of appellant. It is therefore necessary to briefly set forth the facts as disclosed by the record.

The respondent is a Negro woman of the age of sixty or more years. She enjoys a splendid reputation for honesty, fair dealing, faithfulness and veracity. Until her injury, she was strong, active and energetic, and her services were much sought after. That she was a cheerful, willing and dependable worker has been proven beyond doubt; and it cannot be questioned that she was painfully, seriously and possibly permanently injured. Since her injury she has remained cheerful and willing, but unable to do but little work, and hence aside from pain and suffering, there has been a considerable diminution of her earning power.

On the evening of July 26, 1939, at about 9 o'clock, respondent, accompanied by another woman, attempted to go to the home of one of her many employers and was walking along Epworth Street, which was a narrow street (unpaved) and not provided with sidewalks. On either side of the driveway (and walkway) of the street there were shoulders with grass and weeds growing upon same. When respondent reached a point some 60 or more feet from where her home fronted on said Epworth Street, and partly across a point where Dewey Street intersected, it became necessary for her to step over or back onto the grass-covered shoulder of the street to avoid being struck by an oncoming automobile or automobiles; and when she did so, she stepped into an uncovered hole about 2½ feet or 3 feet in depth and lined with terra-cotta pipe, receiving painful and serious injuries. This hole was dug several years prior to July 26, 1939, by appellant and was used in connection with its waterworks system, having a cut-off valve in the bottom thereof which was connected with the appellant city's water main. When the hole was first dug, the appellant placed an iron cover weighing 40 to 50 pounds thereover, but the length of time the iron cover had been removed from the top of the hole, and from the vicinity thereof, is not disclosed—in fact, respondent's witnesses had no knowledge of the length

of time it had been removed, and appellant elected not to introduce any testimony.

As aforesaid, and on the above-stated facts, the trial Judge submitted the case to the jury after having refused appellant's motion for a nonsuit; and the jury brought in a verdict in the modest sum of $500.00 in favor of the respondent. There is no exception taken to the charge of the Judge to the jury.

The facts of the case of *Livingston v. South Carolina State Highway Department,* 178 S. C., 323, 183 S. E., 8, 11, are sufficiently similar to the facts of this case as to make the holding therein apposite; and we quote copiously therefrom:

"The appellant contends that the traveling public, pedestrian and vehicular, should be confined to the use of the paved central strip or the paths running immediately alongside thereof. The adoption of this rule, certainly as to pedestrians, would be unjustified in the light of experience, and in view of present day traffic conditions upon our highways. There is an ever present danger to the foot traveler upon the pavement from all manner of motor vehicles, moving with every variety of speed. Pedestrians in the lawful use of State highways especially at night, should not be restricted within such narrow limits unless the statute clearly requires such construction, and we find no provision therein which would warrant us in so holding. If they took counsel of wisdom, or had due regard for life and limb they would steer a reasonably safe course from the paving and from the traveled path which runs in such deadly proximity thereto. Pedestrians have a right, of course, exercising ordinary care, to walk in this dangerous area. They also have an unquestioned right under our present highway laws to use any portion of the highway which may be maintained for travel by the State highway authorities, for legitimate purposes of travel. No law now extant forbids it. The rule of reason and the law of self-preservation favor it.

"We do not say that the liability and duty of the appellant to keep its highways in a reasonably safe condition for travel, free from defects, and in reasonably good repair, extend to the uttermost width of its right of way. The law, however, does require the appellant to maintain in a reasonably safe condition for travel that portion of its roadbed which is set aside and maintained in such condition as to invite its use for travel by the public, whether paved or unpaved.

"The duty resting upon the state highway department is not fully discharged by making the traveled part of the highway safe, but such measures as ordinary prudence requires must be taken to prevent persons, using ordinary care, from falling into dangerous places along the widest of that portion of the roadbed set apart and maintained for travel thereon by the public.

\*  \*  \*

"There was sufficient testimony in this case to go to the jury, and the county court was fully warranted in refusing the motions for a nonsuit, a directed verdict, and for a new trial.

"Finally, the appellant imputes error to the county judge because of his refusal to charge the following request in the following language: 'Stated in another way, if people who use a highway fail to notice a defect or something which might cause damage to someone traveling the highway, it may be presumed that the Highway Department had no notice of it. As to this hole, if you find that it was not such as would be observed by persons constantly traveling along the highways, or those in charge of repairing the highways, then you may conclude that the Highway Department had no notice of it, and therefore could not be charged with negligence in allowing it to stand.'

"The presiding judge was correct in refusing to charge this request, for the reason that the court should not charge a jury as to any presumptions or inferences that it could

draw as to negligence. To have done so would have been to charge on the facts. *Weaver v. Southern Ry.*, 76 S. C., 49, 56 S. E., 657, 121 Am. St. Rep., 934.

"In addition to this, it is to be observed that the hole complained of was created and left there by the appellant itself, and was not due to the negligence of any third party. If the hole had been filed up, as some of the witnesses for the appellant testified it was, then the appellant should have anticipated that the loose dirt would settle and leave a depression, which might cause injury to one stepping into it. It was said in the case of *Morris v. Langley Mills et al.*, 121 S. C., 200, 113 S. E., 632, 36 A. L. R., 302: 'The measure of a county's duty (keeping the highway free from defects and negligent repair) is ordinary care to provide against such dangers to the traveling public as may reasonably be anticipated, having due regard to the character of the travel, the incidental purposes for which a highway may be lawfully used, and the nature of the danger at the point in question.' "

The respondent affirmatively pleaded lack of contributory negligence, and set forth certain specifications of negligence on the part of appellant, including: (1) leaving said hole or valve box open and uncovered; (2) failure to cut grass on shoulders so as to afford a view of the open valve box or hole; (3) failure to properly inspect said street or streets; (4) that by the exercise of slight care, appellant could have ascertained the existing condition, but failed to do so; (5) that if appellant did inspect, it failed to remedy the existing condition; (6) failure to securely fasten the top of any cover it might have had to close said valve box or hole; (7) failure to exercise either ordinary or even slight care to have ascertained that said valve box or hole was open.

The respondent had no knowledge that the appellant maintained his hole or valve box on the shoulder of this street. Appellant not only knew that it had many years ago dug or sunk this deep hole or valve box in the shoulder of the

street, but that it was a narrow street with no sidewalks, and that pedestrians would from time to time be forced to step onto and use the shoulders in order to avoid injury from vehicles using said street. It also had reason to know that unless said hole or valve box was kept constantly covered, it would constitute a serious hazard to any pedestrian using the shoulder, especially in the nighttime. It also knew that the cover it had placed thereon was easily removable, which required ordinary care and diligence by it in the inspection of said street.

The exhibits in the case consisting of photographic views of the shoulders of this street at the point where respondent was injured are mute evidence of the lack of care of these shoulders by appellant.

"It is accepted law that a municipality must keep its streets in reasonably safe condition for public use, and to that end must use ordinary care and reasonable diligence in inspecting and supervising its streets. It is also accepted law that one traveling the streets of a city has the right to assume that the streets are kept in reasonably safe condition." *Correll v. City of Spartanburg,* 169 S. C., 403, 408, 169 S. E., 84, 86.

Appellant takes the position that as respondent lived within 50 to 75 feet of the hole or valve box which was open, she should have known of its existence and the defect, and if it was negligence for the appellant not to have known about it and repaired it—placed a cover over it —then it was negligence on the part of respondent not to have discovered the defect. We are unable to follow this reasoning. The appellant is responsible for the valve box being on the shoulder of the street, and the duty devolved upon it to use ordinary care and reasonable diligence in inspecting and supervising the valve box. Certainly the trial Judge could not say as a matter of law that the only reasonable inference to be drawn from the testimony was that the failure of respondent to have observed this valve box, and its open

condition, under the circumstances of this case, contributed as a proximate cause to her injury. As this Court has so often said, ordinarily contributory negligence is an issue to be submitted to the jury.

Citation of authority is unnecessary to support the postulate that in considering motions for nonsuit or directed verdict, all testimony must be viewed in the light most favorable to the plaintiff, and if more than one reasonable inference can be drawn from the testimony, it becomes the duty of the trial Judge to submit the case to the jury.

Appellant relies strongly upon the case of · *Driggers v. City of Florence,* 190 S. C., 309, 2 S. E. (2d), 790. While the facts of that case are somewhat similar to those of the case under consideration, yet when carefully analyzed, they differ in essential respects; and as in all cases, "the facts make the governing law."

After a careful study of the record in this case, it is our opinion that the trial Judge committed no error in his refusal to grant either appellant's motion for a nonsuit or its motion for a new trial.

Judgment affirmed.

Mr. Chief Justice Bonham, Messrs. Justices Fishburne and Stukes and Mr. Acting Associate Justice T. S. Sease concur.