15291

BOZARD v. CITY OF ORANGEBURG

(15 S. E. (2d), 642)

April, 1940.

*Mr. L. A. Hutson,* of Orangeburg, for appellant,

Messrs. *Sims & Sims*, of Orangeburg, for respondent,

July 7, 1941.

The opinion of the Court was delivered by Mr. Acting Associate Justice L. D. Lide.

The plaintiff herein on or about the 15th day of September, 1939, according to his testimony, while leaving the school grounds of Ellis Avenue School, one of the public schools of Orangeburg, attempted to cross a bridge over a canal at the edge of the school grounds, and by reason of his foot hitting a board which "stuck up out of the ground" at the end of the bridge on the school grounds, he fell, and as he was in the act of falling he caught hold of the railing on the side of the bridge, which due to its rotten and defective condition, gave way, throwing him into the canal, resulting in the breaking of his collar bone and other injuries. An action was brought in his name by his duly appointed guardian *ad litem* against the City of Orangeburg to recover for his alleged injuries, he being an infant of the age of 14 years.

The complaint alleges that the canal or large ditch over which the bridge in question was located was used by the city for important drainage purposes, and it would appear that perhaps this canal was originally a natural watercourse. The complaint also alleges defective construction and neg-

ligent maintenance of the bridge and that it was constructed "with the approval and consent of the defendant," but does not state by whom. The defendant answered the complaint denying liability and specifically denying that the bridge was constructed or maintained by the City of Orangeburg, or that it was a part of the streets, roadways or sidewalks of the city. The defendant also demurred for insufficiency of factual allegations to constitute a cause of action, because the complaint fails to allege that any injury sustained by the plaintiff was caused by reason of a defect in a street, causeway, bridge, or public way, or by reason of defect or mismanagement of anything under the control of the city, which was then being used in connection with the repair of streets, causeways or bridges.

Upon the hearing of the demurrer, Judge Oxner, who was presiding, concluded that it would expedite the final disposition of the case to overrule the same and hear the testimony. At the conclusion of the testimony in behalf of the plaintiff, the defendant moved for a nonsuit on substantially the same grounds as those set out in the demurrer, but the trial Judge overruled the motion, deciding to hear the remainder of the testimony. And at the end of all the testimony the defendant moved for a directed verdict, which was not then passed upon, but the case was submitted to the jury under the charge of the presiding Judge, and the jury returned a verdict in favor of the plaintiff for the sum of $250.00. Thereafter counsel for the respective parties were heard on the motion of the defendant for a directed verdict, and on April 22, 1940, Judge Oxner handed down an order to the effect that a verdict be directed in favor of the defendant and that the verdict found by the jury in favor of the plaintiff be set aside. Whereupon plaintiff brought the case to this Court on five exceptions which really raise two points only, to wit, (1) Was the bridge in question a part of the street system of the City of Orangeburg? Or, stating it more accurately: Was there any evidence from which the jury could reasonably conclude that the bridge at which

plaintiff was injured was a part of the street system of the City of Orangeburg and for which it was responsible? (2) Did the Court have power to direct a verdict in favor of the defendant after having submitted the case to the jury, which returned a verdict in favor of the plaintiff?

After considering all the evidence adduced in this case, our conclusion is that upon the fundamental question involved in this appeal there is no substantial dispute as to the facts. Fair Street in the City of Orangeburg extends in approximately a northerly direction to a point nearly opposite the bridge in question, and on the western side of the street there is a cement sidewalk, there being none on the other side; and it appears that this sidewalk is frequently used by school children in going to and from the Ellis Avenue School above mentioned. The bridge is not located on Fair Street, and it does not lie in front of the street or sidewalk. In other words, if the street including the sidewalk were extended in the same direction it would never strike the bridge. The street comes to and end where it reaches the bank of the canal at a place well beyond the bridge.

According to the testimony of Edward Hawes, city engineer, and the plat made by him, which was introduced in evidence, the bridge in question, five feet wide and 40 feet in length, and obviously only for the use of pedestrians, was located across the canal above mentioned, starting on the school property on the northern side and extending to the property of the estate of Mrs. M. H. Watson on the southern side, and is 31 feet from Fair Street at the nearest point, there being an irregular footpath from the bridge to the street. The bridge is, roughly speaking, at right angles to Fair Street, that is to say, approximately at right angles to the end thereof.

It is true that counsel for the plaintiff questions the accuracy of the plat, but the record contains no evidence impeaching it, save the mere estimates of plaintiff and certain of his witnesses, and these estimates place the bridge much nearer the street than the measurements purporting to have

been made by Mr. Hawes. But on the other hand, neither the testimony of the plaintiff nor any of his witnesses makes the bridge a part of Fair Street, or questions that it is located to the west thereof, and we are of opinion that the only reasonable conclusion that can be drawn from the evidence is that the same was in no sense a part of Fair Street.

The testimony is uncontradicted that this bridge was constructed by the superintendent of the public school system of the City of Orangeburg about seven years prior to the trial of this case, there having previously been another bridge at the same location, also built by the school authorities. He testifies expressly that the bridge was constructed by his orders and that the City of Orangeburg did not pay or do anything toward the construction of the bridge in question or that of the former bridge, and did not pay anything to maintain them. "The entire cost and maintenance was by the school board." He also said that the northern end of the bridge is on land of the school district, and that he got permission from the owner of the land on the southern end of the bridge. The city did not construct the bridge nor authorize the school authorities to do so, and has never recognized it as a way for pedestrians, by repairing it or having anything to do with it.

The theory of appellant seems to be, however, that because the sidewalk on Fair Street was admittedly used by the school children in going to and from school it necessarily followed that the city had some sort of responsibility for the bridge, but the duty of the city in this connection is confined to its own bridges or bridges on its streets. The mere fact that a child using the street either coming to or going from the school would of necessity cross over the bridge could not in itself impose any liability on the city. In other words, it would have no more responsibility for the bridge than it would for the path leading from the bridge to the school building.

It is true that the bridge stood over a canal which is used by the city for drainage purposes, but obviously this fact

does not make the city responsible for bridges placed over this canal by other parties, and which are not on its streets.

The liability of the city is, of course, dependent upon the terms of Section 7345, Code 1932, which imposes liability upon a town or city for bodily injuries sustained through a defect in any street, causeway, bridge or public way, or by reason of defect or mismanagement of anything under the control of the municipal corporation within the limits of the town or city; but the latter clause has been frequently construed to relate only to defect or mismanagement of anything under the control of the town or city connected with the municipality's obligation to keep the streets reasonably safe. No useful purpose would be subserved by citing the numerous cases which have arisen under this section. Perhaps the most recent case is that of *Crosby v. City of Chester,* S. C., 14 S. E. (2d), 552, where the defect consisted of an uncovered hole in which was installed a water cut-off valve, and this was on the shoulder of the street. Hence, the judgment against the city was affirmed.

In the case of *Hutchison v. Summerville,* 66 S. C., 442, 45 S. E., 8, this Court held that a municipality may be held liable for damages resulting from failure to place safeguards at a ditch at which a sidewalk ends. And there is testimony in the record here that the city did put a barricade of some kind at the end of Fair Street, that is to say, on the southern edge of the canal, although there is a conflict in the testimony as to the nature and length of the barricade as its existed prior to the accident resulting in plaintiff's alleged injuries. But as pointed out by Judge Oxner in his order, the insufficiency of any barricade at that point is not relevant to this case, for the reason that the plaintiff, according to his own testimony, was approaching the bridge from the school grounds "on the northern or opposite side of the bridge." As Judge Oxner well says: "The insufficiency of any barricade, which is the subject of conflicting testimony, has no bearing whatever upon the present case."

In the case of *Stone v. City of Florence,* 94 S. C., 375, 78 S. E., 23, 24, the city was held liable for injuries sustained by a five-year-old child, resulting from falling in a ditch negligently unguarded. The record shows that this ditch was either partly within the street or on the extreme edge of the street. And the Court held that it was not material whether the ditch was "wholly within the street, or merely along the extreme eastern edge of it." In other words, the ditch was either actually in the street or immediately adjoining it, thus constituting a hazard to persons using the street. But there is nothing in this case, nor in any others which have been brought to our attention, that would extend liability to a bridge constructed and maintained by some other party and lying wholly outside of the street, neither touching it nor being a part thereof an any sense.

We are, therefore, of opinion that Judge Oxner should have directed a verdict in favor of the defendant in the case at bar when the motion was first made.

But this brings us to the second point involved in the appeal, which raises a somewhat interesting question. It was held by this Court in the case of *Jenkins v. Pilot Life Ins. Co.,* 186 S. C., 518, 197 S. E., 28, 30, that a trial Judge might reserve his decision on a motion for a directed verdict until the verdict had been rendered by the jury, but that this should be done only "when such procedure is agreed to by counsel engaged in the case." See, also, *Brown v. Mutual Life Ins. Co. of New York,* 186 S. C., 245, 195 S. E., 552. But in the later case of *Clardy v. Sovereign Camp, W. O. W.* 193 S. C., 444, 8 S. E. (2d), 748, 749, this Court, speaking through the Chief Justice, took occasion to say specifically "that it does not look with favor upon this practice"; and in the still later case of *Phillips v. Western Union Tel. Co.,* 194 S. C., 317, 9 S. E. (2d), 736, 738, 129 A. L. R., 397, the Court speaking through Mr. Justice Stukes, says: "This court had recent occasion to disapprove this practice and the wisdom of such disapproval is evidenced by the record of this appeal."

The Transcript of Record does not state just when the instant case was tried, but doubtless it was before the first expression of disapproval by this Court. But we think this case well illustrates the misunderstandings which might arise under the practice in question. The transcript shows that when the defendant made a motion for a directed verdict the Court said: "I will reserve my decision, and if the jury returns a verdict against the defendant I will hear you fully then." So far as the record for appeal indicates, no response was then made either by counsel for the plaintiff or for the defendant; and counsel for plaintiff contends in effect that he did not agree to such a reservation. Judge Oxner, however, states in his order that the motion for a directed verdict was taken under advisement, "with the consent of counsel on both sides." But even if there was no express consent the presiding Judge was well warranted under the circumstances in assuming that the reservation of his decision on the motion was agreed to. We have, therefore, concluded to acquiesce *pro hac vice* in the course adopted in the Court below, again expressing our disapproval of the practice.

The exceptions are overruled and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES BAKER, FISHBURNE and STUKES concur.