19060

William R. WYATT, Respondent, v. GREENVILLE COUNTY, Appellant.

(174 S. E. (2d) 762)

*E. P. Riley, Esq.,* of Greenville, *for Appellant,* cites:

*William D. Richardson, Esq.,* of Greenville, *for Respondent,*

May 28, 1970.

BRAILSFORD, Justice.

This is an appeal by Greenville County from a judgment recovered against it by William R. Wyatt for personal injury sustained when an unstable catch basin cover flipped under his weight.

The action was brought under Section 33-921, Code of 1962, which waives the county's immunity from suit in favor of one who has been injured by a defect in a roadway occasioned by the neglect of the county, provided such person has not been guilty of contributory negligence.

The sole issue on appeal is the sufficiency of the evidence to take the issue of the county's negligence to the jury. We state the evidence in the light of the settled rule that all conflicts in the testimony, and all inferences reasonably deducible therefrom, must be resolved in favor of plaintiff.

The catch basin or storm drain is located in Dunean Mill Village. The streets in this village have been part of the county road system since 1954 when the mill employees purchased the residences, and the streets were conveyed to the county. It extended from the edge of the gutter, through the curb, and into the grass plot between the curb and sidewalk. The lid or cover was of heavy metal, 14″ × 36″ × 2″, and weighed about 100 pounds. It was designed to be securely seated over the opening on a grooved metal frame, but to be removable for convenience in cleaning out the drain.

The mishap occurred on the night of October 29, 1967, as plaintiff prepared to enter his car, which was parked near the curb and catch basin. Plaintiff had not noticed the drain earlier in the evening when he parked at this location and entered his brother's house. He did not notice it on his

return until he stepped upon the cover and it flipped over, causing him to fall into the opening and painfully injuring him. Plaintiff testified that he had examined the catch basin sometime later, and found the cover unstable. He said that as of the day of the trial (March, 1968), it was in the same condition and would turn over if a person stepped on the edge of it. He had never noticed the catch basin prior to his accident.

Plaintiff's brother, who had lived in the neighborhood for seven years, testified that he knew of other accidents involving the catch basin and knew that it was dangerous. When asked what happens when you step on the cover, he replied, "Well, it's out of proportion in weight. A man's weight will cause it to trip." He testified that he, with plaintiff's two attorneys, visited the scene on the morning of the trial. He saw one of the attorneys place his right foot on the edge of the lid, while standing in the street on his left foot, and cause it to tilt. A picture of this experiment was introduced in evidence. He stated that the lid was not moved or tampered with in any way before it tilted under the attorney's foot. He has seen the county workmen clean the drain several times.

The brother's neighbor, who responded to plaintiff's calls for help after his injury, testified that the catch basin had been in the same condition during the seventeen years of his residence there; that the cover would tilt when stepped upon, and that "most of the time" it was not properly positioned over the drain. We quote his explanation of why the cover would tilt. "(I)t's suppose to fit down in a groove like, so when the grass grows there and it gets dirt under it, it grows up, it'll tilt. You put your foot on it and it'll tilt." He has seen the county workmen cleaning the drain at least three or four times.

A high school boy testified that shortly before Halloween he was playing in the street in the vicinity of this catch basin. As he backed up to catch a ball, he stepped into the open

drain. The cover was not in place. It was "in there sticking straight up." He testified that he frequently played on the street and had observed the catch basin on other occasions. Sometimes the cover would be "laying down in it." Other times it would "be half on." When asked what condition the cover was in, he replied, "Well, it's about four or five inches from what it's suppose to be behind, and that bottom thing, the bottom part of it is broke off, and it's sort of wobbly if you just barely touch it." Again, quoting from the testimony of this witness:

"Q. I would like to ask you if you put your foot on the front of this catch basin, and put your weight on it, what would happen?

"A. The steel part right here would just go over, and you'd fall in it if you wasn't careful.

"Q. Would that still happen right now?

"A. Yes, sir.

"Q. Has anything been done, to your knowledge, to this catch basin to correct it since you fell in it?

"A. No, sir."

The final witness for plaintiff was an Avon representative who testified that she sustained a fall in the summer of 1966 when she stepped from her car into the catch basin in question. It was open, and she did not recall having seen the cover.

We need not recite the testimony of defendant's witnesses as to the condition and stability of the catch basin and cover, which was in irreconcilable conflict with that of plaintiff's witnesses. All of the conflicts have been resolved in plaintiff's favor by the verdict. It is not within our competence to weigh the evidence. Only the trial court has the authority to do so in granting relief from a verdict which appears to be unjust. Our only inquiry is whether there was any testimony which reasonably tended to show that there was a defect in the street occasioned by the neglect of the county. We are constrained to hold that there was.

The county relies heavily upon the case of *Driggers v. City of Florence*, 190 S. C. 309, 2 S. E. (2d) 790 (1939), in which plaintiff was injured by stepping into an open water meter box in the grass plot between the dirt sidewalk and roadway. The court's refusal to submit the case to the jury was sustained because the only evidence by which it was sought to establish that the city was negligent with respect to the water meter was the testimony of one witness that the box had been seen uncovered two hours before the accident. This testimony was held insufficient to warrant a finding that the city had constructive notice of the defect, *i. e.*, the absence of the protective cover.

In the case at hand the jury could reasonably infer from the evidence that plaintiff was injured by a defect or dangerous condition in the street which had existed for such length of time that the county should have discovered and remedied it, and that it was negligent in failing to do so. The principles stated in *Crosby v. City of Chester*, 197 S. C. 66, 14 S. E. (2d) 552 (1941), and *Floyd v. Town of Lake City*, 231 S. C. 516, 99 S. E. (2d) 181 (1957), in each of which recovery was allowed on facts similar to those in this case, are controlling.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.