TAYLOR v. BARKER.

1. It is the settled law of this State that in action to enforce a contract entered into by a married woman in 1881 and 1883, it is necessary to show that such contract was made with reference to her separate estate.
2. The referee and Circuit Judge having differed in their findings of fact,

the testimony was carefully examined by this court and the Circuit decree reversed.

3. The purchaser of machinery from A gave three notes for the purchase money, all of which stipulated that the machinery should be A's until paid for. B endorsed one of these notes and at maturity paid it. Holding this note as his own and another one of the notes, then past due, as attorney at law for A, B surrendered his note, taking a new note from the purchaser, secured by a mortgage of the machinery and also a mortgage of land belonging to the purchaser's wife, and wrote to A that he had secured himself by a mortgage of land. This mortgage was duly recorded, but A having no actual notice of it, afterwards took new notes from the purchaser and a mortgage of the machinery, and marked the original notes "settled by making new notes." *Held,* that A's junior mortgage should be preferred to B's, because (1) B, as an attorney, could not secure himself at the expense of his client; and (2) when B took his mortgage, the mortgagor had no property in the chattels mortgaged.

4. Equity requires an attorney to exercise towards his client the utmost good faith, and he cannot retain an advantage over his client which his position enabled him to acquire.

Before WALLACE, J., Pickens, July, 1888.

This was an action by George W. Taylor against J. S. Barker, Evaline Barker, and The Geiser Manufacturing Company. The opinion fully states the case.

*Messrs. Keith & Hollingsworth,* for Mrs. Barker.

*Messrs. Brown & Tribble,* for *Geiser Man. Co.*

*Mr. James P. Carey,* for respondent.

March 1, 1889. The opinion of the court was delivered by

MR. JUSTICE MCIVER. For a proper understanding of the questions raised by this appeal, it will be necessary to make a brief statement of the several transactions between the parties, out of which this controversy has arisen. In December, 1881, the plaintiff sold and conveyed to the defendant, Evaline Barker, who was then and still is the wife of her co-defendant, J. S. Barker, a tract of land containing 541 acres for the sum of $1,-900, taking her notes, payable in one, two, and three years, with

interest from date, together with a mortgage of the premises, and also a mortgage on another tract of land, containing 117 acres, known as the Dacusville tract, to secure the payment of the purchase money. On the 1st of June, 1882, the defendant company sold and delivered to defendant, J. S. Barker, certain machinery for the sum of $1,408, taking his four notes, each for the sum of $352, and payable respectively four, eight, twelve, and sixteen months after date, with interest from date. On the first of these notes, the plaintiff was the surety of said J. S. Barker, and soon after it fell due, to wit, on October 25, 1882, it was paid by the plaintiff, the note then amounting to $363. On the back of this note there is an endorsement showing that on December 2, 1882, J. S. Barker paid on it to plaintiff the sum of $163. On March 5, 1883, the defendant, Evaline, not having paid any portion of the debt of $1,900 above referred to, reconveyed the 541 acre tract to the plaintiff, and at the same time conveyed to him the 117 acre tract, known as the Dacusville land, which the testimony shows, and the referee finds, was worth $800, and the plaintiff conveyed to said Evaline another tract of land, containing 362 acres, worth $400, and surrendered to her the three notes for the $1,900, and also surrendered to J. S. Barker the note which plaintiff had paid for him as his surety to the defendant company, upon which there was a balance of $200, besides interest due to plaintiff by J. S. Barker. In this transaction Barker and wife gave their note to plaintiff for $280, the payment of which was secured by a mortgage on the 362 acre tract of land given by Mrs. Barker to plaintiff, as well as by a mortgage given by J. S. Barker to plaintiff on the machinery which he had bought from the defendant company.

On April 19, 1883, the defendant company took from J. S. Barker three new notes, designated by the referee as *green* notes, signed by both Barker and wife, in lieu of the three unpaid notes given for the purchase money of the machinery, which were secured by J. S. Barker's mortgage on the machinery, as well as by Mrs. Barker's mortgage on the 362 acre tract of land; and the original notes, marked "settled by making new notes April 19, '83," were delivered to J. S. Barker. These *green* notes as well as those originally given to secure the payment of the pur-

chase money of the machinery, each contained a stipulation that the machinery should remain the property of defendant company until said notes were paid in full.

This action was brought to foreclose the mortgage given by Mrs. Evaline Barker on the 362 acre tract of land, as well as the mortgage given by J. S. Barker on the machinery to secure the note of $280 in favor of plaintiff, and the Geiser Manufacturing Company was made a party defendant, as holding junior mortgages on the said property.

The referee, to whom it was referred to take and report the testimony, together with his conclusions of fact thereon, made his report, accompanied with the testimony, which is set out in the "Case," and after finding the facts substantially as above stated, found that the debt for $280, represented by the note, was not a contract in reference to the separate estate of Mrs. Barker, but was the debt of her husband, J. S. Barker. He does not seem to have made any specific findings as to the issues arising between the plaintiff and the defendant company, except that he does say that the mortgages taken by plaintiff were not taken with any intent, either on the part of the plaintiff or the defendant, J. S. Barker, to defraud said company. To this report the plaintiff alone excepted, on the grounds set out in the "Case," and on hearing the report and exceptions the Circuit Judge sustained the exceptions, overruled the report, and rendered judgment that the mortgaged property be sold, and the proceeds, after deducting costs and expenses and any lien for taxes, be applied to plaintiff's debt, directing the clerk first to apply the proceeds of the sale of the land, and if that should prove insufficient to pay plaintiff's debt in full, then that so much of the proceeds of the sale of the machinery as may be necessary be so applied, and the balance, if any, to the defendant company; and that if the proceeds of the sale of the land should prove to be more than sufficient for the payment of the debt due plaintiff, then such excess be paid over to defendant, Evaline Barker. From this judgment the Geiser Manufacturing Company and Mrs. Evaline Barker appeal upon the several grounds set out in the record, which need not be stated here, as we propose to consider the several material questions which these grounds raise.

The material question raised by the appeal of Mrs. Barker is, whether the contract upon which plaintiff bases his action was a contract in reference to her separate estate; for although one of her grounds of appeal seems to raise the question whether she ever in fact signed the note and mortgage, and if so, whether she was not overreached by the plaintiff and her husband, and whether there was any consideration for the note, yet these questions do not seem to be seriously pressed in the argument, and could not well be, for the evidence to show that she signed these papers was quite sufficient for that purpose, and there is an entire absence of any evidence that either the plaintiff or her husband used any improper influence to induce her to execute the papers. And so far as the consideration is concerned, the seal is quite sufficient.

The real inquiry, then, is as to whether the contract sought to be enforced against her was a contract in reference to her separate estate. We think it must be regarded as the settled law of this State, at the time the contract here in question was entered into, that in an action to enforce a contract executed by a married woman, it is necessary to show that such contract was made with reference to her separate estate. *Habenicht* v. *Rawls*, 24 S. C., 461; *Aultman* v. *Rush*, 26 *Id.*, 517; *Gwynn* v. *Gwynn*, 27 *Id.*, 525. The burden of proof, then, being on the plaintiff, the real inquiry is whether he has shown that this contract was made in reference to the separate estate of Mrs. Barker. This he has attempted to do solely by his own testimony tending to show that the note was given for the difference in the exchange of lands, or, as it is expressed in the testimony, for "boot in the land trade." It is true that the plaintiff does so say in his testimony, but we think it is most abundantly shown, not only by the circumstances surrounding the transaction, but by his own statements made in a letter to the agent of the defendant company only two days after the exchange of lands, on March 5, 1883, that he is mistaken in so testifying. In that letter, which was put in evidence, he says, in speaking of this transaction, "We swapped even, or nearly so. He gave me a little boot, so I have taken a mortgage on his new place to secure what he owes me on the machinery and the boot, amounting in all to $280." This

language of the plaintiff himself, deliberately put in writing, only two days after the transaction, when the matter was fresh in his memory, shows conclusively that much the larger part of the consideration of the $280 was the individual debt of this appellant's husband, for which she could not be made liable, as the undisputed testimony shows that the amount which J. S. Barker owed plaintiff on the machinery was at least $200, besides interest, as shown by the endorsements on the note which plaintiff had paid as the surety of Barker to the defendant company, which note the plaintiff says in his testimony he turned over to J. S. Barker in the transaction of March 5, 1883, when the $280 note was given. It is beyond question, therefore, that the consideration of that note was, in large part at least, the individual debt of J. S. Barker; and as there were other transactions between J. S. Barker and the plaintiff, it is impossible to ascertain how much, if any, of the consideration of the $280 was for boot in the exchange of lands; and this it was incumbent upon the plaintiff to show before he could recover any judgment against Mrs. Barker.

The letter of the plaintiff to the agent of the defendant company also shows that the plaintiff's memory was at fault in another particular; for in his testimony he says that he has no recollection of ever having had in his possession any of the notes of J. S. Barker to the defendant company; thinks he would have remembered it if he had had them; that no such claims were entered on his collection book, and that though he kept files of his letters, he has been unable to find any letter showing that such notes had been sent to him. Yet the letter above referred to, dated March 7, 1883, only two days after the exchange of lands, shows conclusively that he did have at that time in his hands for collection at least one of these notes, and that he had endeavored to get the same secured by a mortgage of real estate; and this is fortified by the positive testimony of Dr. Divver, the agent of defendant company, that he had lodged such note with the plaintiff for collection, or to be secured.

In addition to this, the undisputed circumstances surrounding the transaction go to confirm the view which we have taken. In the outset, Mrs. Barker was the owner of a tract of land containing 117 acres, which the testimony shows was worth at least

$800, upon which, so far as the evidence shows, there was then no encumbrance. In December, 1881 (but on what precise day is not shown, though in favor of the plaintiff, we will assume it was the first day), she bought 541 acres from plaintiff at the price of $1,900, payable in three equal instalments in one, two, and three years. On March 5, 1883, when only one of these instalments had become payable, the trade is recanted, and she not only reconveys the same land to the plaintiff, but also conveys to him her $800 tract of land, and receives in exchange a conveyance for the 362 acre tract, shown to be worth only $400, and that, too, encumbered by a mortgage to nearly three-fourths of its value.

The bare statement of this transaction would be sufficient to show that either the grossest imposition was practised upon this lady, which we are very unwilling to believe, or that the indebtedness of her husband to the plaintiff entered into the transaction. For even if the interest on the notes for $1,900 be calculated from the 1st day of December, 1881, to March 5, 1883, at the rate of ten per centum per annum, the rate which plaintiff says they bore (though, as the law then stood, they could have legally borne only seven per cent.), and the value of the 362 acres then conveyed to Mrs. Barker be deducted from the value of the tract reconveyed, together with the value of the 117 acres then conveyed to plaintiff, the balance would be in favor of, instead of against, Mrs. Barker, viz. :

Value of tract of 541 acres reconveyed,   $1,900 00  
"   of tract of 117 acres then conveyed,   800 00  
                      ————— $2,700 00  

By 3 notes of Mrs. Barker to plff. for   $1,900 00  
" int. on same fr. 1 Dec., 1881, to 5  
    March, 1883, @ 10 per cent.,   240 14  
" value of tract of 362 acres conveyed to  
    Mrs. Barker,   400 00  
                      ————— $2,540 14  

Leaving balance in favor of Mrs. Barker,   $159 86

It seems to us, therefore, clear that the plaintiff has failed to show what portion, if any, of the note sued upon constituted a

debt for which Mrs. Barker could be held legally liable, and hence there was error in rendering any judgment against her; for the plaintiff was bound to show not only *some* liability, but the *amount* of such liability before he is entitled to recover judgment. While, therefore, it may be possible, though we must say that we do not think it likely, that a portion of the consideration of the $280 note was boot in the land trade, yet the evidence wholly fails to show the amount of such liability, but, on the contrary, most abundantly shows that much the greater portion of the consideration was the individual debt of the husband, for which the wife could not be held legally liable, notwithstanding the fact that she signed the note and mortgage.

Inasmuch as it is conceded that Mrs. Barker cannot be held liable on the mortgage to the defendant company, as that was unquestionably given to secure her husband's debt, there is no ground upon which any judgment could have been rendered against her, and hence, so far as she is concerned, the judgment below should be reversed, and the complaint as to her should be dismissed.

In reaching this conclusion, we have not been unmindful of the well settled rule, that a finding of fact by the Circuit Judge will not be disturbed unless it is without any evidence to sustain it, or against the manifest weight of the testimony. But it will be observed, that in this case there was a direct conflict, upon the material question of fact, between the referee and the Circuit Judge; and when that is the case, we are at liberty to look carefully into the testimony, with the view of ascertaining where the error lies. A careful examination of the testimony satisfies us that the manifest weight of the evidence sustains the conclusion which we have adopted. The decree of the Circuit Judge does not indicate the grounds upon which he reached his conclusion, but after an unusually careful examination of the testimony, we are unable to discover any evidence tending to support his conclusion, except the testimony of the plaintiff himself, which is conclusively shown by his own letter, written when the facts were fresh in his memory, to say nothing of the other testimony and circumstances, to have been a mistake.

We come next to the appeal of the defendant company, in

which the material inquiry is, whether it or the plaintiff has the prior lien upon the machinery. This question, so far as the "Case" discloses, seems to have received but little attention at the hands either of the Circuit Judge or the referee. Indeed, the referee does not appear to have made any distinct finding in regard thereto, except by fixing the dates of the several mortgages; but the Circuit Judge has distinctly accorded the priority to the plaintiff, and we must, therefore, consider whether there is any error in such adjudication.

There is no doubt that, so far as the dates of the *formal* mortgages are concerned, the plaintiff has the priority—his mortgage being dated March 5, 1883, while that of this appellant is dated April 19, 1883, and both recorded in due time. It appears, however, from the testimony in the case, that each of the notes given by J. S. Barker to the defendant company on June 1, 1882, when he purchased the machinery through the agency of the plaintiff, contained a stipulation, that the title to the machinery was to remain in defendant company "until this note is paid in full." Each of these notes was, therefore, an instrument in the nature of a mortgage, which, however, could not affect the rights of subsequent creditors or purchasers without notice. But of this lien, the plaintiff clearly had notice, for he was surety on one of these notes, and they were all of the same tenor; and after paying the note upon which he was surety, he held it against Barker from the date of the payment—October 25, 1882—until it was settled in the transaction of March 5, 1883, when it was surrendered to Barker.

But more than this, we think that plaintiff's own letter of March 7, 1883, conclusively shows that at the time he took his mortgage on the machinery, he had in his possession, as attorney for the defendant, the second . note, then past due, to be collected or secured, the terms of which showed that the defendant company then held a lien upon the machinery, the condition of which was broken, the effect of which was to vest in defendant company not only the title to, but the right of possession of, the machinery. It seems to us, that for an attorney, entrusted with the duty of collecting or securing a client's claim, to take a mortgage on property to secure his own debt at the expense of his client, is such

a transaction as cannot be sanctioned by a Court of Equity, which always scrutinizes closely dealings between parties occupying fiduciary relations towards each other, and requires the utmost good faith—*uberrima fides*.   In addition to this, the plaintiff, when communicating to the agent of the defendant company, by his letter of March 7, 1883, his failure to secure their claim by a mortgage on real estate, not only omits to give the company any intimation of the fact that he had taken a mortgage on the machinery, but, on the contrary, his language was well calculated to convey the impression that his claim had been secured in another way, to wit, by a mortgage on land, for he says : "So I have taken a mortgage on his new place, to secure what he owes me," &c.

It is argued, however, that when the defendant company subsequently, on April 19, 1883, took new notes, with additional security, and surrendered the old notes, the same were paid, and the lien arising from the stipulations therein contained was then extinguished,  and the new lien then created by the formal mortgage to the company must be regarded as junior to that created by the mortgage to the plaintiff of March 5 previous.   But it must be remembered, that at the time the plaintiff took his mortgage, the title to, as well as the right to the possession of, the machinery had revested in the defendant company by reason of the breach of the condition of the lien, which was, in effect, a mortgage, of which, as we have seen, the plaintiff had notice. Hence, when Barker undertook to mortgage the machinery to the plaintiff, he had no right to do so, as he then had neither the title to, nor the right of possession of, the property sought to be mortgaged.

So that, even if the giving the new notes be regarded as payment of the old, which is always a question of intention (as to which there is no distinct finding below, and about which there might be some question), the plaintiff could not have acquired a prior lien by his mortgage of March 5, 1883.  If the taking of the new notes on April 19, 1883, be regarded as a payment of the old notes, originally given for the machinery, whereby the lien of the old notes was extinguished, then the transaction of April 19, 1883, must be regarded as a re-sale of the machinery

to Barker at that time, as the title to, as well as the right of possession of, the machinery had then been revested in defendant company by reason of the breach of the condition of ·the original lien, which was in effect a mortgage, and such re-sale being accompanied with a mortgage to secure the payment of the purchase money, such a mortgage became a superior lien to that which the plaintiff undertook to place upon the machinery by his mortgage of March 5, 1883, when the mortgagor had no power to create a lien upon property which had then reverted to the defendant company.

Besides, in view of the fact, that at the time the plaintiff took his mortgage, the relation of attorney and client existed between the plaintiff and the defendant company, he was not at liberty to subordinate the rights and interests of his client to his own until he had severed the relation or given to defendant company full and distinct notice of his purposes, so that such company might provide for its own interests. This he not only did not do, but, on the contrary, as we have seen, the language of his letter above referred to was well calculated to throw the company off its guard by creating the inference that the claims of the plaintiff against Barker had been secured in another way. While, therefore, we are not disposed to impute to the plaintiff any intentional wrongdoing, we do not think that a Court of Equity, which scrupulously requires the utmost good faith and fullest disclosures in all dealings between persons occupying fiduciary relations towards each other—especially between attorney and client—will permit a person to retain an advantage which his position enabled him to acquire at the expense of his client, whose interests he was bound to protect. It is true that the defendant company, at the time it took its mortgage of April 19, 1883, had *constructive* notice derived from the recording of plaintiff's mortgage of March 5, 1883, and but for the fiduciary relation existing between the parties when plaintiff took his mortgage, that would have been conclusive in favor of the plaintiff; but we do not think such notice amounts to that full disclosure required of a party who occupies a fiduciary relation towards another.

It seems to us, therefore, that the Circuit Judge erred in according to the plaintiff's mortgage on the machinery priority over

the mortgage to the defendant company, and that in this respect also the judgment below should be reversed.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for such further proceedings as may be necessary to carry out the views herein announced.

MR. CHIEF JUSTICE SIMPSON concurred generally, and MR. JUSTICE McGOWAN concurred upon the authority of the decided cases.