16735

TROY CEMETERY ASS'N., INC., *ET AL.* v. DAVIS *ET AL.*
(75 S. E. (2d) 458)

306

*Messrs. Mays, Featherstone & Bradford,* of Greenwood, *for Appellants,*

*Mr. J. Perrin Anderson,* of Greenwood, *for Respondents,*

*Messrs. Mays, Featherstone & Bradford,* of Greenwood, *for Appellants, in reply,*

April 15, 1953.

OXNER, Justice.

This action was brought to enjoin appellants from erecting a monument on a small rectangular strip of land lying between lots 63 and 63½ in Troy Cemetery, Greenwood County. Respondents contend that this strip of land constitutes part of a common walkway and should not be obstructed. Appellants claim that the area between the two lots mentioned, although originally intended for use as a walkway, was purchased by their parents. They further assert that respondents, having known for a long number of years that the Davis family claimed ownership of this area and contemplated erecting an expensive monument thereon, remained silent and permitted appellants to contract for the erection of said monument and to make a substantial payment thereon. On these facts an estoppel is claimed.

The case was referred to the Master for Greenwood County who found that appellants had bought and paid for the strip of land in controversy, and further concluded that respondents were estopped from denying the right of appellants to erect said monument. The Circuit Judge reversed both of these findings, held that appellants had no right to use the land claimed, and granted an injunction.

The cemetery was established by the Town of Troy in 1886 and managed by its town council until 1908, when it was turned over to an unincorporated association, known as Troy Cemetery Association. This Association was reorganized under the same name in 1931 and new officers elected. In 1951, it was incorporated.

The Davis family has taken an active interest in this cemetery from the time it was established. J. C. Davis, father of appellants, was an officer of the Association for a long number of years. His daughter, Mrs. Cuddy, was secretary from 1908 to 1931 and president from 1931 until her death in 1941. In 1950, Miss Nora Davis, one of the appellants, was elected president.

J. C. Davis purchased lot No. 63 in 1887, shortly after the cemetery was opened. Lot 63½ was purchased by him about 1921. Appellants claim that the space between these two lots was purchased by their father shortly prior to his death in 1924, in order that the two lots might be connected and made one large unit as a burial place for the Davis family, and that shortly after Mr. Davis' death, the purchase price was paid by Mrs. Davis, now deceased. This couple had nine children, all of whom are dead except appellants. The parents, along with five of the children, are buried in lot No. 63 and two of the children are buried in lot 63½. Fifteen or twenty years ago, the Davis family began planning for the erection of a large family monument between the two lots. Various circumstances arose which delayed the consummation of this undertaking. It was not until 1951 that appellants entered into a formal contract for the erection of this monument, together with small markers for the various graves and a curbing around the entire unit. The contract price was $3,400.00 and a down payment was made of $1,000.00. The monument was about to be shipped when this action for injunctive relief was brought by respondents.

Although the officers of the Association were people of outstanding prominence and unimpeachable integrity, its affairs appear to have been handled in a rather unbusinesslike manner. No deed was given to a purchaser. The only record of sales kept by the Association is contained in a ledger showing the names of the purchasers, the lots bought and amounts paid. There was no entry of the date of any sale. Reference is made in the testimony to the practice of giving receipts to purchasers, but it is not altogether clear

that this policy was consistently followed. Moreover, the testimony shows one instance in which a lot was purchased in 1921, but no receipt was issued until ten years later. There is no record in the minutes of any meetings of the Association between August 25, 1911 and August 25, 1931, nor between July 12, 1932 and August 30, 1950. However, during these periods the Association continued to function through its officers. Lots were sold from time to time. The uniform price was $5.00.

The testimony shows that on several occasions the Association sold the walkway between lots, which was then used by the purchaser to connect lots already owned so as to form a single unit. The price charged for a space of this kind was $5.00, the same as that for a lot. This practice of selling parts of walkways for lots seems to have recently met with disfavor. At the annual meeting of the Association held in August, 1951, a resolution was passed, stating "that what had been done in regard to closing walks and laying coping enclosing individual lots be left as was, but that in the future the Association have authority to prevent the closing of walks and any irregularity in laying off lots."

Before entering into a discussion of the issues on this appeal, we wish to point out that no question is raised as to the right of the Association to sell portions of walkways for burial purposes. We shall, therefore, assume that the Association was at liberty to do so, and proceed to determine whether the evidence shows that the Davis family owns that portion of the walkway lying between their two lots. The Master found as a fact that shortly before his death, J. C. Davis contracted to purchase this space and after his death, his wife paid for it. The Circuit Judge disagreed, and held that this conclusion on the part of the Master was purely conjectural and without evidentiary support. Under these circumstances, we shall determine the question according to our view of the preponderance of the evidence.

Appellants have encountered considerable difficulty in undertaking to carry the burden of proof resting upon them of showing that their parents, both of

whom are now dead, purchased the area claimed. None of the officers of the Association during the period in controversy (about 1924) are living. Mrs. Cuddy, a sister of appellants and secretary of the Association from 1908 to 1931, died in 1941. Mrs. Kennedy, who was treasurer of the Association from 1908 to 1924 (and probably until 1931), is apparently dead. At least, she did not testify. Her niece, a practicing physician of Atlanta, Georgia, identified her handwriting in the ledger. W. H. Robinson, who became treasurer in 1931, died in 1946. J. T. Solomon, who managed the cemetery for the Town of Troy from 1887 to the organization of the Association in 1908 and who was superintendent from 1908 until about 1925, died in 1940. As heretofore pointed out, no deed was ever made to any lot. Ownership can now be established only by the ledger of the Association or by a receipt. The Davis family have been unable to find any receipts for lots 63 and 63½, which were concededly purchased by J. C. Davis. No one is in a position to testify as to whether a receipt was ever issued for the space between the Davis lots. One may or may not have been given. In establishing ownership, appellants have had to rely on the ledger and such corroborating evidence as they could find after the lapse of so long a period of time.

In the ledger, which was kept by the treasurer, the lot owners are grouped in alphabetical order under the caption, "List of Lot-holders in Troy Cemetery." There are four columns. The first contains the numbers of the lots sold, the second the names of the owners, the third column is captioned "Paid to Town Council", and the fourth, "Paid to Cemetery Association." The name of J. C. Davis appears under the letter "D", in two lines as follows:

"No. 63 Davis, J. C. . . . . . . . . . . . . . . . . . . . . . . 5.00    5.00
No. 63½ Davis, J. C. . . . . . . . . . . . . . . . . . . . . . .    5.00".

These lines are separated by a line showing sale of lot No. 98 to another party.

We agree with the following analysis which the Master made of the foregoing entries and certain other entries appearing on an envelope pinned in the back of the ledger:

"The figure '5.00' in the third column of the first line very clearly shows that J. C. Davis paid $5.00 to the Town Council for lot No. 63; and the figure '5.00' in the fourth column of the second line shows that J. C. Davis paid $5.00 to the Cemetery Association for lot No. 63½. So much is conceded. The issue, therefore, more sharply pointed up, is whether the figure '5.00' in the fourth column of the first line indicates that J. C. Davis paid $5.00 for the walkway between these lots.

"The figure '5.00' in the fourth column of the first line is in a distinctive handwriting different from that of either of the other 5.00's. It was proven to be in the handwriting of Mrs. Emma Neel Kennedy who was Treasurer from 1908 to 1924 or possibly 1931. Various 5.00's opposite other names are in the same handwriting. Though no entries in the ledger are dated, the time of the particular entry in question is determined by the following chain of evidence. Pinned to a sheet of the Treasurer's book is a memorandum signed 'Lois', identified as Mrs. Lois Davis Cuddy, Secretary from 1908 to 1931, as follows:

" 'Cemetery money from J. T. S.

| | |
|---|---|
| George White | $5.00 |
| Mrs. John Wardlaw | 5.00 |
| Mr. G. A. Smith | 5.00 |
| J. P. Creswell | 5.00 |
| Mrs. J. C. Davis | 5.00 |
| Dr. D. W. Youngblood | 5.00 |
| Mrs. Sallie Tolen | 5.00 |
| Mrs. Will Roberts | 5.00.' |

"The initials 'J. T. S.' were evidently for J. T. Solomon, Superintendent of the cemetery.

"In the ledger each of these names or the names of members of their immediate families are found with the figure '5.00' after each in the fourth column in the same handwriting as that of the Davis entry; that is, in the handwriting of the Treasurer, Mrs. Kennedy. Since both Mrs. Kennedy and J. T. Solomon left Troy in 1924, it is quite evident that

the entry in the fourth column in the first line of the Davis entries shown above represents $5.00 paid by Mrs. J. C. Davis to J. T. Solomon, Supterintendent of the cemetery, by him turned over to Mrs. Cuddy, the Secretary, and by her transmitted to Mrs. Kennedy, the Treasurer, and by her entered in her ledger accounts not later than 1924.

"This $5.00 payment by Mrs. J. C. Davis in 1924 or earlier was not for lot No. 63 nor lot No. 63½. The family never bought any other lot. I find from this evidence that this entry represents payment for that part of the walkway lying between those lots as claimed by the respondents (appellants on this appeal)."

The Circuit Judge said that assuming that the entry relied on by appellants is correct, "it would indicate that J. C. Davis made two payments for lot 63, having made one payment to the Town Council of Troy during the time they operated the cemetery and another payment to the Cemetery Association at a later time." We think this explanation is an unreasonable one. In the first place, the circumstances show that the $5.00 payment in controversy was made by Mrs. Davis and not Mr. Davis. It is further very unlikely that Mr. Davis would have paid twice for the same lot or that any demand would have been made upon him to do so, particularly in view of the intimate association of the Davis family with the operation of this cemetery and the fact that his daughter was secretary from 1908 until 1931. The Circuit Judge further stated, "that it is as reasonable to conclude that the $5.00 entry was made through error as it is to conclude that it represents payment for a portion of the walkway." But the evidence points rather clearly to the fact that this entry was not an error but represented a payment made by Mrs. Davis.

The ledger, with the clarifying circumstances, clearly shows that the Davis family made three distinct payments of $5.00 each. Two of these, made by Mr. Davis, concededly represent payments for lots 63 and 63½. What does the remaining payment made by Mrs. Davis

represent? It is true that it was inserted in the ledger on the line covering lot No. 63, but it must be remembered that this lot had already been paid for and that the walkway areas were not numbered. This payment may be connected up with the walkway area by circumstantial evidence. In such a case the rule applicable in criminal cases does not apply. "In civil actions, every other reasonable conclusion need not be excluded; proof of circumstances warranting a given inference is sufficient in such cases." *Brown v. Brown*, 215 S. C. 502, 56 S. E. (2d) 330, 335, 15 A. L. R. (2d) 163.

In the instant case, the circumstances heretofore mentioned, when considered in connection with others shown in the record but which for the sake of brevity will not be reviewed, reasonably warrant the inference that the payment by Mrs. Davis was for the portion of the walkway between the two lots of the Davis family. No doubt the treasurer in recording this payment, which was for an area having no number but adjacent to lot 63, deemed that line as an appropriate place to record the payment. In reaching this conclusion, we have not considered certain evidence claimed by respondents to be incompetent as violating the hearsay rule.

While not a proper consideration in proof of ownership, it may be of interest to state that appellants, two cultured, well-educated ladies, whose integrity no one would question, along with other members of the Davis family, have for a period of approximately twenty years considered this walkway area as belonging to them. In fact, among the papers of Mrs. Cuddy found after her death was a plat made in 1928 by Emmett I. Davis, brother of appellants, which showed all the property claimed by appellants consolidated as one lot, with no indication of a walkway between the two lots purchased by the Davis family.

Respondents contend, and the Circuit Judge held, that the measure of proof required of appellants was the same as that relating to the establishment of a lost instrument. It is argued that it was incumbent upon them to either produce a receipt for the payment of the plot

claimed or show the loss of such receipt and prove its contents. Although a receipt may have clearly shown the purchase of this property, this was not the only method by which that fact could be established. We see no basis in the instant case for the application of the rule as to the quantum of proof required in actions to establish lost instruments or to enforce rights under same. No greater degree of proof was required of appellant than that resting upon a plaintiff in the ordinary civil case. See *Rumph v. Hiott*, 35 S. C. 444, 15 S. E. 235.

In view of the foregoing conclusions, it is unnecessary to pass upon the question of estoppel.

The decree of the Circuit Court is reversed and the action dismissed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.