17730

J. A. SHERBERT, Jr., Appellant, v. Ruby Nell SHERBERT, Respondent

(117 S. E. (2d) 715)

*Messrs. Poliakoff & Poliakoff* and *Moore & Stoddard,* of Spartanburg, *for Appellant,*

*Arnold R. Merchant, Esq.,* of Spartanburg, *for Respondent.*

January 5, 1961.

OXNER, Justice.

This action was brought on August 22, 1959 by a husband for a divorce on the grounds of adultery and desertion. He also asked that he be awarded custody of the children. His wife denied the charges made against her and interposed a counterclaim in the nature of a cross-action wherein she sought a divorce on the ground of physical cruelty. She also asked for separate maintenance and custody of the children.

The case was referred to the Master for Spartanburg County who after taking considerable testimony filed a report on March 15, 1960 in which he found that the husband had failed to establish the charge of adultery; that while the

wife had left the home without just cause, the desertion had not continued for the required period of one year; and that the wife had failed to prove the charge of physical cruelty. He accordingly recommended that neither party be granted a divorce, that separate maintenance to the wife be denied, and that the custody of the children be given to the husband with visitation privileges to the wife. The case was heard by the County Judge on exceptions to the Master's Report. In an order filed on April 18, 1960, he agreed with the Master that the husband had shown no ground for divorce but held that the wife had established her charge of physical cruelty and was entitled to a divorce on that ground. At the time the action was commenced, there were only two children and proceedings relating to their custody were pending in the Children's Court of Spartanburg County. After the hearing before the Master a third child was born. The County Judge held that the question of custody of the two older children should remain in the jurisdiction of the Children's Court but that the mother was entitled to custody of the third child. He further required the husband to pay to his wife the sum of $10.00 weekly for her maintenance and that of the youngest child.

The case is here on appeal by the husband from the decree of the County Judge. He does not challenge the denial of the divorce sought by him. The only questions presented by his exceptions are whether the Court below erred in holding that his wife was entitled to a divorce on the ground of physical cruelty and whether there was error in granting her separate maintenance.

This action is one in equity. Section 20-105 of the 1952 Code; *Harvey v. Harvey*, 230 S. C. 457, 96 S. E. (2d) 469; *Dobson v. Atkinson*, 232 S. C. 12, 100 S. E. (2d) 531. We are, therefore, at liberty to review the facts and weigh the evidence. Since the Master and County Judge disagreed as to whether respondent had established her charge of physical cruelty, we shall determine the question according to our own view of the evidence. *Troy Ceme-*

*tery Association, Inc. v. Davis,* 223 S. C. 305, 75 S. E. (2d) 458. In doing so, proper consideration must be given to the fact that, "the Master saw the witnesses, heard the testimony delivered from the stand, and had the benefit of that personal observation of and contact with parties and witnesses which may be of peculiar value in arriving at a correct result in a case of this character." *Badder v. Saleeby,* 131 S. C. 101, 126 S. E. 438, 440. Also, see *Hughey v. Eichelberger,* 11 S. C. 36; *Taylor v. Barker,* 30 S. C. 238, 9 S. E. 115.

Both appellant and respondent are natives of Spartanburg County. They were married on April 28, 1952. He was then 36 and she 14 years of age. They lived in a rural section of Spartanburg County and he worked in a textile plant. It was not long before discord developed. They have been separated four or five times, the first occurring about a year after they were married. The fourth took place in January, 1959. Shortly after this separation, appellant brought a proceeding in the Children's Court of Spartanburg County to obtain custody of their two children, who at that time were approximately two and four years of age. In an order filed on March 6, 1959, the Judge of that Court awarded custody to the mother. In a subsequent order on May 8, 1959, custody was given to the father, principally because respondent had left the home of her parents and was then living alone in a rooming house. On June 28, 1959, respondent returned to appellant's home and they lived together about a month before the final separation. It was apparently during this period that respondent became pregnant with the third child.

Respondent contends that on each occasion when they separated she was compelled to leave because he "beat her up". However, she also complains that on numerous occasions he left home at night under the pretext of going to feed the cows and would not return until about bedtime, and that he never went out with her in the evenings. The following is taken from her testimony in the Children's Court, which was made a part of the record:

"Q. What is your biggest complaint about your marriage? A. That he is never with us."

In the instant action, she testified:

"Q. Did you leave your husband because he was gone at night or because he beat you? A. Both, but mostly because he beat me.

\* \* \*

"Q. You say the main reason you left your husband because he would be gone away from home and because he wouldn't take you places? A. Well, he never did take me places.

"Q. You didn't like that, isn't that true? A. No, I didn't like it.

"Q. That was most of your arguments because he wouldn't take you places, isn't that right? A. Part of them.

"Q. That is the main reason you don't want to live with him? A. No, not arguing.

"Q. Is that part of the reason? A. That and him beating on me.

"Q. But mostly that? A. No, but I don't like to sit down there all the time."

Appellant vigorously denied that he had ever struck respondent or otherwise mistreated her, claiming that he had always been a kind and considerate husband.

The County Judge may have pinpointed the real source of the difficulty when, after referring to the difference in the ages of the parties, he stated in his decree that "the basic trouble in the present marriage appears to be incompatibility between the parties." Incidentally, this appears to be somewhat inconsistent with his conclusion that the separation was brought about by physical cruelty on the part of appellant.

Although respondent claims that she was severely beaten and bruised on numerous occasions, she admitted that she never called any law enforcement officer, giving as a reason

for not doing so that all of these officers were friends of her husband's. Several of the neighbors testified that they had never heard of any physical mistreatment. Although respondent said that some of the bruises were on her face where they were clearly visible, no one testified to seeing them except her mother and sister-in-law.

Particular complaint is made of physical cruelty on two occasions. Respondent testified that several years after her marriage and before the birth of her first child, appellant "kicked her in the stomach", resulting in a miscarriage. She was treated for her miscarriage by a local physician but he was not called to testify as to the cause of it. Her testimony as to the other incident emphasized was to the effect that about four years ago her husband, while cleaning a gun, threatened to shoot her. She said that during an argument he drew the gun on her, that she knocked it out of his hand and it discharged. According to her testimony, she then fainted and was taken from her home to the hospital. A neighbor testified that he heard a shot and someone scream, whereupon he had the officers called. Two rural policemen, who answered the call, testified that upon arriving at the home they found respondent lying on the floor but saw no evidence of injury. These officers said the only other person then in the house was respondent's mother and they were unable to get any explanation of what had happened. One of them said that frankly he "never did understand that call", and that appellant did not come to the house until some time later. The neighbor who had the officers called said that he was satisfied that appellant was not present at the time of this occurrence. It will be noted that both of these incidents took place long before the final separation.

It is apparent from the foregoing brief summary of the testimony that there is a sharp conflict on the issue of physical cruelty. The Referee who heard this case is an able lawyer of long experience as Master of Spartanburg County. He evidently rejected the testimony of respondent relating to physical cruelty and we cannot say

under all the circumstances that he erred in doing so. An independent consideration of the entire record leads us to the conclusion that respondent has not sustained her charge of physical cruelty by the preponderance of the evidence.

So much of the decree of the County Judge as granted respondent a divorce and alimony is reversed. Although appellant denied the paternity of the child born after the Master heard the case, there is no exception to that portion of the decree holding that he was the father and requiring him to support this child. The case is remanded to the County Court for further proceedings in accordance with the views herein expressed.

STUKES, C. J., and TAYLOR, LEGGE and Moss, JJ., concur.